## Indemnity Insurance Company of North America v. Neel, etc.

*Hull, Leiby & Metzger,* for plaintiff.

*Ralph B. Umsted,* Deputy Attorney General, for defendant.

*William A. Schnader,* amicus curiae.

WOODSIDE, J., May 22, 1946.—Plaintiff filed this bill in equity to restrain the Insurance Commissioner from exercising certain jurisdiction over a policy issued to a self-insurer providing for payment of any stated loss in excess of $10,000 falling upon such self-insurer, under the terms of The Workmen's Compensation Act of June 4, 1937, P. L. 1552, by reason of any single accident, and to have us declare that section 654 of The Insurance Company Law of May 17, 1921, P. L. 682, as amended by the Act of July 31, 1941, P. L. 607, 40 PS §814, is not applicable to policies of the above type.

An answer was filed by the Insurance Commissioner and a stipulation of facts was entered into. In addition to briefs on behalf of plaintiff and the Insurance Commissioner, a brief was filed, upon leave

of court, by Wm. A. Schnader, Esq., as amicus curiae on behalf of Pennsylvania Self-Insurers Association.

The policy in question was issued by plaintiff to the Berkshire Knitting Mills, of Reading. The Insurance Commissioner, contending he had jurisdiction over the premium rate of the policy by virtue of the provisions of section 654 of The Insurance Company Law of 1921, supra, approved a premium rate of 2¢ per $100 of payroll for the above risk. When plaintiff company fixed and charged 1¢ per $100 of payroll, the Insurance Commissioner directed it to amend the rate to 2¢ or cancel the policy. In a formal opinion of the Department of Justice the position of the Insurance Commissioner was approved, and he thereupon again made demand upon plaintiff to comply with his former order. This bill was then filed.

It is the contention of plaintiff that the above policy is not an insurance *against liability*, but a contract of indemnity *against loss*, and that under The Insurance Company Law of 1921, supra, the Insurance Commissioner has jurisdiction only over those workmen's compensation policies which insure against the liability of the insured.

To determine this question it is necessary to examine The Workmen's Compensation Act of June 2, 1915, P. L. 736, as amended, some of its companion acts, and The Insurance Company Law of 1921, supra.

The Workmen's Compensation Act of 1915 is entitled:

"An Act defining the liability of an employer to pay damages . . . ," and it created a new and different form of liability than the liability which employers had at common law. The liability to pay workmen's compensation for injury or death of an employe in accordance with the schedule contained in

the law was imposed upon employers who elected to accept the act.

One of the main purposes in passing The Workmen's Compensation Act * was "to afford an employe and his dependents prompt, expeditious and immediate relief in case of injury or death, caused by an accident to him in the course of his employment.": De Carlo v. Welsbach Street Lighting Co., 29 Dist. R. 1033, 1035 (1919). To accomplish this it was necessary for the legislature to devise a plan which would prevent the insolvency of an employer from interfering with the full and prompt payment of all benefits due under the act. Thus the legislature provided that all employers subject to the act had to (1) insure this new liability in the State Workmen's Insurance Fund; or (2) insure their liability in some other approved insurance company; or (3) demonstrate to the Department of Labor and Industry their financial ability to pay the compensation levied, and receive a permit exempting them from carrying insurance. The latter class, substantial in number and in amount of compensation paid, approximately 35 percent, have come to be known as "self-insurers", and are so referred to in The Insurance Company Law of 1921, supra.

The State Workmen's Insurance Fund is an instrumentality of the Commonwealth and under its control: Commonwealth of Pennsylvania v. County of

---

* In addition to The Workmen's Compensation Act, the 1915 Legislature passed the following as a part of the Workmen's Compensation program: The Bureau of Workmen's Compensation Act of June 2, 1915, P. L. 758; The State Workmen's Insurance Board Act of June 2, 1915, P. L. 762; the Act of June 2, 1915, P. L. 769, Regulating Policies of Insurance Against Liability; Employers' Mutual Liability Insurance Associations Act of June 2, 1915, P. L. 771; the Act of June 3, 1915, P. L. 777, Exemption of Domestic Servants and Agricultural Workers; Health and Safety of Employes in Anthracite Coal Mines Act of June 1, 1915, P. L. 712; Health and Safety of Employes in Bituminous Coal Mines Act of June 1, 1915, P. L. 716; A Joint Resolution Amending the Constitution, P. L. 1103.

Dauphin et al., 57 Dauphin 215 (1945). The "fund" was created "for the purpose of insuring such employers against liability under article three of the Workmen's Compensation Act of 1915, and of assuring the payment of the compensation therein provided.": section 3 of the Act of June 2, 1915, P. L. 762, 77 PS §221. Subscribers to the fund are "discharged from all liability for the payment of compensation," as the law provides that all compensation arising from such liability shall be paid out of the fund: sec. 20 of said act. It was the "liability" of the employer that the State fund was created to insure.

The Act of June 2, 1915, P. L. 769, regulated "policies of insurance against liability arising under article three of the Workmen's Compensation Act." (See title and section 1 of act.) This act was amended by the Act of July 22, 1919, P. L. 1120, and repealed by The Insurance Company Law of May 17, 1921, P. L. 682, but its provisions were incorporated in the latter act.

The insurance required by the Workmen's Compensation Act, supra, and referred to in the State Workmen's Insurance Fund Act, supra, and The Insurance Company Law, supra, is "liability insurance."

Those entitled to benefits under the act collect not from the employer when he is a contributor to "the Fund", but directly from the fund.

Likewise, a policy of insurance against liability under the Workmen's Compensation Act must "be construed to be a direct promise to the injured employe or to the dependents of a deceased employe having a claim under the Act, and [is] enforceable by action brought in the name of such injured employe or in the name of such dependents.": Act of May 17, 1921, P. L. 682, 40 PS §811.

It is important to distinguish between insurance against liability, and insurance to indemnify against loss.

Insurance policies against liability can be enforced upon the mere liability of the insured. Insurance policies which indemnify against loss are only enforcible when the insured has sustained actual loss, as by paying a judgment against him coming within the scope of the policy: Malley v. American Indemnity Co., 297 Pa. 216 (1929); Pfeiler v. Penn Allen Portland Cement Co., 240 Pa. 468 (1913).

In West v. MacMillan (And Automobile Underwriters Insurance Co. Garnishees, Appellant), 301 Pa. 344 (1930), the court said at page 347:

"Insurance policies may be grouped under two general heads. Those which insure against *liability*, sometimes termed 'liability · contracts', and those which *indemnify against damage or loss or 'indemnity contracts.'* There is not much difficulty with the first class. The policy may be enforced when the insured becomes liable for a loss or damage against which an insurance covenant runs: Fritchie v. Millers Extract Co., 197 Pa. 401. The second class is the more difficult in determining the liability of the insurer; ordinarily the insured cannot enforce the policy until he has suffered an actual loss (Pfeiler v. Penn Allen Portland Cement Co., 240 Pa. 468), . . ." (Italics supplied.)

There can be no doubt that the policy which is the subject of this suit is a policy of indemnity against loss by the employer, and not a policy of insurance against liability.

The policy provides:

"Paragraph I

" 'The company hereby agrees to *indemnify the insured against excess loss as hereinafter defined,* . . . which the insured may sustain.' "

Paragraph II limits the liability of the company to be

" 'only for the ultimate net loss in excess of Ten Thousand Dollars ($10,000) as the result of any one accident or event.' "

Condition D of the policy reads in part as follows:

"(c) Ultimate Net Loss . . . shall mean the sum actually paid in cash in the settlement or satisfaction of losses for which the insured is liable."

Paragraph E:

". . . The company shall not be called upon to assume charge of the settlement or defense of any claim made or suit brought or proceeding instituted against the insured . . ."

Paragraph H:

"Liability under this policy with respect to any accident or event shall not attach unless and until the insured shall have paid the amount of retained limit on account of such accident or event."

The law prohibits any company from writing, without the approval of the Insurance Commissioner, policies which insure against liability, but it does not prohibit those which indemnify against loss.

In section 654 of The Insurance Company Law of 1921, supra, as amended in 1941 (40 PS §814) we find the prohibition in this language:

"Neither the State Workmen's Insurance Fund, nor any insurance corporation, mutual association, or company, shall issue, renew, or carry any policy or contract of insurance against *liability* under 'The Workmen's Compensation Act of one thousand nine hundred and fifteen,' and acts amendatory thereof, except in accordance with the classifications, underwriting rules, premium rates, and schedules or merit rating, proposed by the rating bureau aforesaid for the risk insured and as modified, amended or approved by the Insurance Commissioner for such insurer." (Italics supplied).

The next paragraph of section 654, supra, relating to the filing of policies with the rating bureau refers only to a "policy or contract of insurance against *liability* under the Workmen's Compensation Act . . ." (Italics supplied.)

Further regulation of insurance under The Workmen's Compensation Act is contained in section 653 of The Insurance Company Law of 1921, supra (40 PS §813), in the following language:

"No policy of insurance *against liability* under 'The Workmen's Compensation Act of nineteen hundred and fifteen,' or acts amendatory thereof, shall contain any limitation of the liability of the insurer to an amount less than that for which the insured employer may become liable under the act during the term of such insurance. *No such policy* or contract of insurance, nor any agreement to deliver such insurance, shall be issued except upon a form approved by the Insurance Commissioner as complying with all the terms and provisions of this act. *But a policy* may be issued to a self insurer, qualified under section three hundred five of article three of 'The Workmen's Compensation Act of nineteen hundred and fifteen' or acts amendatory thereof, *providing for the payment of any stated loss* in excess of ten thousand dollars falling upon such self insurer, under the terms of the said act, by reason of any single accident." (Italics supplied.)

The word "policy", which appears three times in the above section, relates the first time it is used to a policy "of insurance against liability," the second time to "such" policy which must refer to the foregoing "policy of insurance against liability," and the third time to a policy "providing for the payment of any stated loss." Under the authority of the cases cited above it is clear that a policy providing for the pay-

ment of any stated loss "indemnifies against loss" and is an "indemnity contract," while the other policies referred to are specifically designated as insurance against "liability" and undoubtedly are such.

Furthermore, the "But" in the last sentence of the above quoted section emphasizes that there is a distinction between what precedes it, and what follows it, for according to Webster's New International Dictionary, second edition, unabridged, "but" used as a connective introducing a sentence means "on the contrary; regardless of that; be that as it may."

The paragraph of section 654 of The Insurance Company Act of 1921, supra (40 PS §814), providing for the classification of risks, under writing rules, premium rates, etc., to be proposed by the rating bureau and approved by the Insurance Commissioner refers to "insurance of employers and employes under the Workmen's Compensation Act . . ."

In the light of the Act of 1915, P. L. 769, regulating policies of insurance against liability, as amended by the Act of 1919, now repealed, but whose provisions have been incorporated in The Insurance Company Law of 1921, (Sections 651 to 655, inclusive), it appears that this, too, relates only to the policies of insurance against liability. Excess insurance policies of the type now before us are policies of insurance of employers only, while liability insurance is "of employers and employes."

It is common knowledge, and has been called to our attention in this case, that both the State Workmen's Insurance Fund and most, if not all, insurance companies authorized to write workmen's compensation insurance policies against liability in Pennsylvania, carry excess insurance policies of the type issued here to the self-insured. The law provides for no supervision of these policies by the Insurance Commissioner, and he has never attempted to exercise such

authority over them as he has exercised and is now attempting to exercise over excess loss policies issued to self-insurers.

It is further to be noted that before an employer can become a self-insurer he must demonstrate to the Department of Labor and Industry his financial ability to pay *all* the compensation levied against him. He is exempt from carrying *any* insurance. Before the department grants the permit exempting him from carrying insurance it satisfies itself that he can pay the entire loss. It is only for the protection of the employer himself, and not for the protection of the employe, that policies of the type in question are carried.

Defendant argues that since 1919 the insurance commissioners have exercised authority over policies of the type in question, and that the legislature having had the act in question before it, and having failed to amend it in this particular, has thus adopted the interpretation placed upon it by the insurance commissioners. This court has held that where a statute is not clear, and the legislature had the act before it for amendment and did not see fit to change the interpretation given by the administrative department, it can be assumed that the legislature knew the interpretation placed upon the act by the administrative department, and by continuing the act in force without amendment, can be considered as having adopted that interpretation: Commonwealth ex rel. v. Beamish, 20 D. & C. 324, 327 (1933). This principle, however, is one which must be applied with caution, and never when the language of the act is clear, as we think it is here: Grime v. Department of Public Instruction, 324 Pa. 371 (1936) ; Nagle et al. v. O'Connor, 88 F. (2d) 936 (1937) ; Commonwealth ex rel. v. Beamish, supra, and the Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 51, 46 PS §551.

An administrative officer should never be permitted to continue the exercise of authority not given him by the legislature, merely because he usurped it in the first instance. There may be many instances, of which this is probably one, where there is an illegal exercise of power by administrative officials, but because in the exercise of such power no person has been sufficiently harmed, the authority has never been questioned by legal action. When the exercise of such power does do harm the injured party should not be compelled to suffer at the hands of an administrative official or agency merely because those who for years were not sufficiently harmed did not question the acts of the officials. An administrative official cannot acquire authority by long continued usurpation.

It seems clear to us, from a careful study of all of the statutory law bearing on the subject, and applying the rules of construction provided in the Statutory Construction Act and the opinions of the appellate courts, that the legislature intended the Insurance Commissioner to exercise authority over premium rates of only those policies insuring the employer against the liability imposed by The Workmen's Compensation Act, and not of those policies issued to indemnify an employer, who is a self-insurer, against loss suffered by him, in paying certain compensation which he had become liable for under The Workmen's Compensation Act. We think that the policy in question is, as defined by the courts, an "indemnity contract" and not a "liability contract.": West v. McMillan, supra.

The facts of this case are not disputed. We have set forth above only such of them as we consider necessary to an understanding of this opinion. Plaintiff has filed requests for nine findings of fact which we have approved and filed. These are to be considered as the findings of the court.

We make the following conclusions of law:

1. The provisions of section 654 of The Insurance Company Law of 1921, as amended, do not apply to contracts of excess insurance issued to qualified self-insurers.

2. Insurers are not required to submit to the Insurance Department of Pennsylvania for its approval the premium rates applicable to excess policies issued to self-insurers and the Insurance Department has no authority to approve or disapprove such premium rates.

3. Plaintiff is entitled to injunctive relief against defendant with respect to the proposed exercise of his alleged power in the above regard.

### *Decree nisi*

And now, to wit, May 22, 1946, it is ordered, adjudged and decreed that defendant and his successors in office, and all of those acting or claiming to act under his authority be and are hereby enjoined and restrained from enforcing or attempting to enforce jurisdiction over the premium rate of the policy issued by plaintiff, referred to in the pleadings of this case, or any renewal thereof, and from instituting or threatening to institute against plaintiff or any of its officers, directors or employes any civil or criminal proceeding based upon the refusal of plaintiff to comply with the demand of defendant to submit such policy and data as requested by him aforesaid, and from imposing or attempting to impose upon plaintiff or any of its officers, directors, agents or employes, any penalty for plaintiff's noncompliance with said demand.

And it is further ordered, adjudged and decreed that section 654 of The Insurance Company Act of 1921, as amended by the Act of July 31, 1941, P. L. 607, 40 PS §814, is not applicable to excess insurance

rates for self-insurers, and the Insurance Commissioner of the Commonwealth of Pennsylvania has no power or authority to approve or disapprove the premium rate on said policies.

The prothonotary is directed to enter the decree nisi and notify the parties hereto, or their counsel, and if no exceptions are filed within 10 days thereafter the decree shall become final. Costs to be paid by defendant.