Howley, Appellant, *v.* Scranton Life Insurance Co.

Argued April 16, 1947. Before MAXEY, C. J., DREW,
LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*John W. Bour,* with him *Carlon M. O'Malley,* for appellant.

*W. J. Fitzgerald,* with him *Fitzgerald & Kelly,* for appellee.

OPINION BY MR. JUSTICE DREW, June 30, 1947:

Plaintiff, Thomas Joseph Howley, filed this bill in equity to recover from defendant, Scranton Life Insurance Company, a policy of insurance issued by defendant on plaintiff's life, and for a decree holding that the policy is in full force and effect under a provision of the policy waiving premium payments in case of permanent total disability. After hearing, the learned chancellor held that inasmuch as plaintiff had failed to make claim for waiver of payment of the premiums because of such disability while the policy was in force, as provided by the policy, he was not entitled to the relief sought, and, therefore, entered a decree nisi dismissing the bill. Upon the entry of a final decree, dismissing his exceptions and affirming the action of the chancellor, plaintiff appealed.

The following appear to be the pertinent facts: On August 28, 1934, defendant issued a policy of insurance on the life of plaintiff in the amount of $7,123. The premiums were paid by cash or by loan note to August 28, 1940. That premium and the indebtedness on the loan note not having been paid, defendant wrote plaintiff on September 20, 1940, that the grace period of thirty-one days would expire on September 28, 1940. On October 4, 1940, plaintiff went to defendant's office, signed another loan note in payment of the premium then due and the interest on his previous note, and gave a certificate of health and an application to reinstate the policy if a physical examination showed he was in good health. He was notified to appear before defendant's physican, but never appeared. Thereafter, on November 1, 1940, defendant returned to plaintiff the loan note which he

had given on October 4, 1940, and advised him that it would give attention to his application for reinstatement upon receipt of a completed medical certificate and return of the loan note. Plaintiff did not submit to the requested examination, and on November 11, 1940, defendant wrote him that the policy was in default for non-payment of the premium and interest on the loan due August 28, 1940, that ". . . in accordance with the terms of this contract, the available cash surrender value has been used to pay the outstanding loan and the policy has automatically surrendered", and further that defendant's check covering a dividend credit would be delivered to him shortly. On November 19, 1940, plaintiff went to defendant's office, received the dividend of $6.91 due him, and returned the policy to defendant.

On April 12, 1943, plaintiff, then about 41 years of age, by his counsel, gave defendant written proof that he had been totally and permanently disabled since 1938, and demanded a return of the policy. Defendant refused to return the policy on the ground that it had been validly surrendered and cancelled on November 19, 1940, and further that plaintiff had failed to give proof of his disability as the policy required.

There is much uncontradicted testimony, both medical and lay, that plaintiff has been, since before the policy became in default on August 28, 1940, permanently and totally disabled. This evidence shows that plaintiff suffered head injuries in an automobile accident on December 16, 1938, and that thereafter he dragged one leg, his speech was "stammering" and "stuttering", his brain tissue became involved, and he was "mentally and muscularly in very bad shape." The testimony further establishes the fact that while plaintiff's condition has now somewhat improved, yet he is still totally disabled to follow any occupation. The Chancellor, in his adjudication, said: "Plaintiff is suffering from a disease that a physician says is multiple sclerosis. His mind wanders and he is forgetful and

incompetent to act. He appears like a person under the influence of liquor. He was an attorney-at-law, giving up his law office before 1938. After being knocked down by an automobile in 1939 [1938] the symptoms of his disability appeared. They were noticeable to his friends and he was under the care of physicians. He has never fully recovered . . . The total disability of the plaintiff and that it will be continuous is not disputed by defendant. The exact date when he became totally disabled is questionable. The fair inference is that it was before the policy lapsed."

The terms of the policy with respect to disability read as follows: *"If, while this policy is in full force and effect* and not otherwise, proof satisfactory to the Company shall have been furnished by or on behalf of the Insured during his lifetime and prior to his fifty-fifth birthday, that, as the result of disease or of bodily injury, he has become and still is totally disabled, and that solely by reason of such disability he has been wholly and involuntarily prevented throughout not less than six consecutive months from doing any work at all, or engaging in any business or occupation whatsoever for compensation, gain or profit, then and in such case, the Company shall by endorsement thereon allow the presumption of permanent total disability, and undertake:

"To waive thenceforth, as they may successively become due, all premiums of said Policy during such permanent total disability; and *in case there shall have been delay in making claim for this relief, to waive, or refund if paid, the premium or instalments thereof, if any, which may have become due during the period of six months preceding the receipt, at the Home Office of the Company, of such proof of permanent total disability;* and provided further, that to be valid and effective the written notice of disability claim must be given to the Company at its Home Office during both the lifetime of the Insured and the period of permanent total

disability, unless it shall be conclusively shown that it was not reasonably possible to give such notice and that notice was given as soon as it was reasonably possible." (Italics added).

While the foregoing provision starts with the statement that proof must be received "while the policy is in full force and effect", this condition is expressly modified by the subsequent clause that "in case there shall have been delay in making claim for this relief, to waive, or refund if paid, the premium or instalments thereof, if any, which may have become due during the period of six months preceding the receipt . . . of such proof of permanent total disability." Therefore, it clearly appears that it was the parties' intention that proof of disability could be given at any time within six months after default, or until February 28, 1941. Even if we were of the opinion that these two statements in the disability provision created an ambiguity, still we would have to view the matter in the light most favorable to the insured: *Sack v. Glens Falls Insurance Co.*, 356 Pa. 487.

Admittedly plaintiff did not give defendant the required notice until long after February 28, 1941. However, on November 11, 1940, which was prior to the six-month period after default, defendant erroneously advised plaintiff that "the policy has automatically surrendered". By so doing, plaintiff, who was then suffering from a serious malady which materially affected his mind, was obviously led to believe that the policy was no longer in force and had no further value. As a result, on November 19, 1940, he turned the policy over to defendant, without any consideration whatsoever. Plaintiff's reliance on defendant's representation that the policy was surrendered cannot be said to have been unreasonable. Under such circumstances, defendant is precluded from taking advantage of plaintiff's delay in furnishing proof of his total disability within the period of six months after the policy lapsed.

It was said in *Morton v. Washgtn. Nat. Ins. Co.*, 156 Pa. Superior Ct. 77, 80, 39 A. 2d 154: "Even as the disability must occur before default, so must proof of the disability be given to the company before the lapse of the insurance." However, it is equally well settled, as this Court said in *Arlotte v. Nat. Liberty Ins. Co.*, 312 Pa. 442, 445, 167 A. 295, that ". . . a party to a contract cannot escape liability under his obligation on the ground that the other party has failed to perform a condition precedent to the establishment of such liability or to the maintenance of an action upon the contract, where he himself has caused that failure. As stated in Williston, Contracts, section 677, 'It is a principle of fundamental justice that if a promisor is himself the cause of the failure of performance, either of an obligation due him or of a condition upon which his own liability depends, he cannot take advantage of the failure.' Thus, an insurer will not be permitted to take advantage of the failure of the insured to perform a condition precedent contained in the policy, where the insured itself is the cause of the failure to perform the condition."

We are convinced that defendant cannot set up the failure of plaintiff to perform the condition of the policy as to proof of his permanent and total disability, and for that reason the learned chancellor erred in not decreeing that defendant return the policy in suit to plaintiff, with an endorsement thereon allowing the presumption of permanent total disability, that all premiums be waived during such disability, and that the policy be recognized as being in full force and effect.

Decree reversed, and the record remitted to the court below in order that a decree be entered in accordance with this opinion. Costs to be paid by defendant.

---

DISSENTING OPINION BY MR. JUSTICE HORACE STERN:

The policy of life insurance on which the present action is brought was issued on August 28, 1934. It provided for the annual payment of a premium of $217.39,

but this was subsequently changed to payment in semi-annual instalments. The policy further provided that "If any premium or instalment thereof be not paid before the end of the period of grace, *then this Policy shall immediately cease and become void,* and all premiums previously paid shall be forfeited to the Company, except as provided in this Policy." The period of grace referred to was for 31 days "during which time the Policy will remain in force."

Plaintiff failed to pay the instalment of premium due August 28, 1940. He had borrowed on the policy and an instalment of interest on his loan note also became due at that time but it likewise was not paid. On September 20 the Company wrote to plaintiff reminding him that the period of grace would expire September 28 and urging him to give the matter his prompt attention. He failed to respond to this warning, with the result that on September 28, both the premium and the interest on the loan note remaining unpaid, the policy, by its express terms, ceased and became void. It does not appear that the Company immediately notified plaintiff to that effect, but when an insured fails to pay a premium and the policy thereby ceases the company is under no obligation to give notice of forfeiture: *Brams v. New York Life Insurance Co.*, 299 Pa. 11, 148 A. 855. The policy in the present case provided for such notice only where forfeiture depended on plaintiff's failure to repay a loan or the interest thereon, not where it automatically resulted from a default in the payment of premiums.

On October 4 plaintiff visited the Company's office and of his own accord—realizing that the policy was no longer in effect—he signed an application for its reinstatement, expressly admitting therein that the policy had lapsed. He furnished a "Certificate of Health" in which he was asked the question: *"Are you now in sound health?"* His answer was *"Yes"*. To the question: *"Have you been ill or consulted a physician or physicians during the past five years?"* his answer was *"No"*,

On October 8 the Company notified plaintiff that in addition to his Health Certificate it desired a medical health certificate from Dr. T. J. McDonnell; to obtain this it would have been necessary for him to appear before that doctor for examination. He paid no attention to this letter. On October 23 the Company repeated its request. He again ignored it. On November 1 the Company advised him that on receiving a certificate from Doctor McDonnell it would give his application for reinstatement prompt attention. He once more failed to respond. Finally, on November 11, the Company wrote to him that, since the policy was in default by reason of non-payment of the semi-annual premium and interest due August 28, "the available cash surrender value has been used to pay the outstanding loan, and the policy has automatically surrendered". Even then the Company held out to him a life-line for it added: *"If you are not interested in restoring this case,* kindly return the policy to us."

It need scarcely be stated, so far as this conditional request of the Company to return the policy is concerned, that the mere fact of its possession by either party had no bearing whatever on plaintiff's rights thereunder, for if it was not of any further force and effect its retention by plaintiff would not have been of any advantage to him; on the other hand, his handing over of the policy would not in itself defeat any rights to which he might be entitled in accordance with its provisions. On November 19 plaintiff returned the policy "for the purpose of automatic surrender". At the same time the Company paid him a dividend of $6.91, to which payment he was admittedly entitled.[1]

---

[1] It is said in the majority opinion that "he turned the policy over to defendant, without any consideration whatsoever." If the policy had ceased, what consideration *should* the Company have paid for the mere return of the paper on which the policy was written?

The Company no doubt filed the policy in its "dead" files, for it had every reason to suppose that the case was ended. Nothing occurred for nearly two and a half years. On April 12, 1943 plaintiff's counsel wrote to the Company a letter in which, for the first time, it was represented that plaintiff had been totally and permanently disabled since January, 1939, more than four years before. The purpose of this claim was to take advantage of the rider on the policy which provided that "If, while this policy is in full force and effect and not otherwise, proof satisfactory to the Company shall have been furnished by or on behalf of the Insured . . . that . . . he has become and still is totally disabled . . . then and in such case, the Company shall . . . undertake: To waive thenceforth . . . all premiums of said Policy during such permanent total disability; and in case there shall have been delay in making claim for this relief, to waive, or refund if paid, the premium or instalments thereof, if any, which may have become due during the period of six months preceding the receipt . . . of such proof of permanent total disability".

The majority opinion interprets these clauses to mean that plaintiff could delay the making of a claim . for disability even to a time after the policy was, according to its terms, no longer in force and effect. Let us assume, without discussing the point, that this construction is correct, and that, regardless of whether or not the policy had ceased, plaintiff had six months after default in which to furnish proof of disability. This would have extended the time for that purpose until February 28, 1941. But he did not furnish proof within that period, nor, as has already been stated, until more than two years thereafter. According to the majority opinion this additional delay is excused because the Company notified plaintiff on November 11, 1940, that "the policy has automatically surrendered," and it is said that by so doing plaintiff was falsely led to believe that the policy was void. But what are the facts? (1)

Plaintiff himself had already recognized that the policy was not in force, for he expressly so stated in the "Certificate of Health" which he gave to the Company on October 4, 1940; it is obvious, therefore, that the letter of November 11 was not the cause of his believing that the policy had expired.[2] (2) So far from the statement in the Company's letter of November 11 being false, it was in fact wholly true, because the policy *had* ceased according to its express terms. The most that can be said is that, *notwithstanding the termination of the policy,* plaintiff still had until February 28, 1941, to prove that he had become totally disabled while the policy was still in force. Thus, by way of analogy, if a policy of fire insurance were to extend from July 1, 1946, to July 1, 1947, and it provided that the insured must give notice of a fire within ten days after it occurred, and a fire did occur on June 27, 1947, it is obvious that the policy would nevertheless expire, in accordance with its terms, on July 1, 1947, although the insured would still have until July 7, 1947, to give notice of the previous loss. So, in the present case, plaintiff's policy automatically became void on September 28, 1940, by reason of his default in the payment of the premium due August 28; the only right which he retained thereafter was to furnish a belated proof, up to February 28, 1941, of a permanent total disability that may have occurred prior to September 28, 1940; that right he would have, *not because the policy remained in force, but in spite of the fact that it had ceased.* Upon such proof being made the Company, in performance of its undertaking, would waive payment of the premium and thereby restore the policy to the status of an effective obligation. How then was the Company guilty of any misrepresentation? After plaintiff had defaulted

---

[2] Plaintiff testified to a telephone conversation he had with an agent of the Company in which he was told that the policy had become void, but this conversation also was in November,—at least a month after the "Certificate of Health" was given on October 4.

in the payment of the premium how was it in error in asserting that the policy had lapsed? How could it have imagined that plaintiff had become totally and permanently disabled when, so far from announcing that fact, he had given the Company a certificate in which he categorically asserted that he was then in sound health and had not been ill or consulted a physician during the preceding five years? How could the Company anticipate that more than two years later plaintiff would repudiate the certificate which he had thus voluntarily given and make a belated claim on a policy which had long since become void by reason of his own acts both of commission and omission? If the majority opinion properly represents the law plaintiff could furnish his proof of disability at the expiration of ten or twenty years with the same impunity, from a legal point of view, as at the expiration of the two or more years which he did in fact permit to elapse.

On the whole it seems to me that to give judicial sanction to a claim such as this is to make it impossible for any insurance company ever to know when its liability under a policy is at an end and whether, therefore, it is meeting the requirements of the statutory law in regard to its compulsory reserves.

In my opinion the decree of the court below should be affirmed.

Mr. Justice ALLEN M. STEARNE concurs in this dissenting opinion.