## Philadelphia Manufacturers Mutual Fire Insurance Company, Appellant, v. Rose.

Argued May 23, 1951. Before DREW, C. J., STERN, JONES, BELL, LADNER and CHIDSEY, JJ.

George H. Detweiler, with him Robert A. Detweiler, David Fulmer Keely, and Charles W. Sweeney, for appellant.

Lemuel B. Schofield, with him W. Bradley Ward and Marvin Comisky, for appellee.

OPINION BY MR. CHIEF JUSTICE DREW, June 27, 1951:

Philadelphia Manufacturers Mutual Fire Insurance Company, plaintiff, insured certain real estate owned by Max Rose, defendant. A fire occurred in 1946 and thereafter plaintiff filed a petition for a declaratory judgment to determine whether its policy covered the building damaged by the fire. The learned trial judge held that it did not. Upon exceptions being filed, the court en banc dismissed the proceedings as not being a proper case for a declaratory judgment. An appeal was then taken to this Court. We reversed and remanded it to the court below for consideration and disposition of defendant's exceptions: Phila. Mfrs. Mut. Fire Ins. Co. v. Rose, 364 Pa. 15, 70 A. 2d 316. The court below then sustained defendant's exceptions and entered an order in his favor. Plaintiff again appeals.

The facts are substantially undisputed. In 1936 defendant purchased a large tract of land fronting on the Delaware River in northeast Philadelphia on which were the remains of a building 590 feet long that had been previously damaged by fire. In 1941 the southern 425 feet of this building was rebuilt. At that time the entire west wall was intact for the full length of 590 feet. The north wall was also intact and sections of the east wall as well as part of the roof in the unrepaired area remained in place.

In March of 1943, defendant secured from plaintiff a fire insurance policy covering specifically the repaired portion of the building which was identified as Building No. 20. Paragraph 2-A of that policy provided, inter alia: "ADDITIONS AND EXTENSIONS —This Policy also covers . . . (1) additions, extensions, alterations and repairs to buildings and structures herein insured . . ." While that policy was in force the northern portion of the building was repaired so that from the outside there was one complete building. Inside the building, a corrugated iron wall separated the northern and southern sections and defendant leased each of these sections to different companies. Because paint spraying operations were being carried on in the northern section, plaintiff required that defendant install a sprinkler system near the partition wall as a safety precaution. Defendant promptly complied with this requirement. Thereafter the policy was continually renewed and the third renewal was in effect when the fire occurred on August 8, 1946.

The fire caused considerable damage to the northern section but did not spread to the southern 425 feet of the building. Plaintiff contends that only the section of the building which had been repaired at the time the original policy was issued was covered and that plaintiff is not liable for damage done in the northern section. The learned court below held, however, that the

northern portion was covered by the Additions and Extensions clause in the policy.

Plaintiff relies strongly on a clause in the policy which states: "Reference is hereby made to plan on file in the office of the Philadelphia Manufacturers Mutual Fire Insurance Company, Philadelphia, Pa., for further description and location of property hereby insured." Four plans have been filed in plaintiff's office, the last of which is dated September 17, 1943. On that plan the southern portion of the building is shown as Building No. 20. The northern section, which at that time was still in the process of reconstruction, is marked "Modification Building". Plaintiff argues that it insured only Building No. 20 and the plan shows that the southern section constituted all of that building. It is plaintiff's position that the area where the fire occurred was a separate building connected to Building No. 20 by a party wall. Such a construction of this policy would ignore the admitted facts and reduce the Additions and Extensions clause to a nullity.

The record discloses that prior to 1936 the northern and southern sections comprised one building. The southern section was first repaired and the insurance policy then obtained. The northern section was repaired during the term of that policy. Merely because the two sections were repaired at different times and leased to different tenants certainly does not cause them to be separate buildings in the eyes of the law. Nor do the plans upon which plaintiff places such great stress prove them to be separate buildings. On the contrary, the four plans, all of which were prepared by plaintiff's engineers, clearly demonstrate that it was one building which was being repaired and reconstructed. The first of these plans was prepared on March 29, 1943, thirteen days after the policy became effective and prior to any work being done on the northern

section. That plan shows the west wall intact for the full 590 feet. The north wall was also intact and part of the roof and east wall were likewise in place. Certainly the restoration of the roof and east wall could not be said to create a new building. The later plans, the last of which was dated September 17, 1943, show the reconstruction work in progress. The fact that on the last plan the northern section then being rebuilt was labelled "Modification Building" cannot aid us in a determination of whether that section was covered by the policy. That question can only be decided by reference to the Additions and Extensions clause.

In the original policy that clause stated: "This Policy also covers . . . (1) additions, extensions, alterations and repairs to buildings and structures herein insured . . ." The structure insured was Building No. 20. The repairs to the northern section of that building were in the nature of an extension of the southern section which was admittedly covered by the policy. After these repairs were completed it was one continuous structure all of which was covered by plaintiff's policy. Plaintiff would have us interpret that clause as covering only such items as chimneys, flues, loading platforms and sheds. Such an interpretation would be inconsistent with former decisions of our appellate courts.

In *Carpenter v. Ins. Co.*, 156 Pa. 37, 26 A. 781, a frame building adjoining a brick house was destroyed by fire. Plaintiff sued on his policy which covered "the two story brick dwelling house with slate roof and its additions adjoining and communicating, . . ." We there held that the policy "clearly embrace[d] the frame addition which was totally destroyed by the fire."

In *Seeds v. Royal Insurance Company*, 75 Pa. Superior Ct. 302, 304, two buildings were connected only by a brick wall running from one to the other. The

Insurance Company claimed that the policy applied only to one of the buildings. The Superior Court rejected that argument, stating: "If the terms 'additions' or 'extensions' applied to those existing at the time of the policy, it would seem they were mere surplusage for a description of the premises would necessarily include them."

In both of those cases the portions of the premises destroyed were readily distinguishable from the main building and were of substantial size in relation to them. Nevertheless, they were included as within the meaning of the words "additions and extensions." Certainly here, where the extension was merely a repair of the original building and upon completion formed an integral part of the building, it is obvious that the northern section was covered by the Additions and Extensions clause of the original policy. That being true, the renewals of that policy also included the northern section for, as the learned court below stated, "to hold that [plaintiff] in successive policies did not insure the addition and extension would be to find that those policies, without any notice or statement to that effect, they had restricted their coverage to less than what it had been in the initial policy. Such a conclusion would be absurd."

Furthermore, a comparison of the original policy with the renewal policy in force at the time of the fire, makes it apparent that the result we have reached is in full accord with the intention of the parties. The original policy covered "additions, extensions, alterations and repairs". The renewal policy covers only "*new* additions and extensions". Bearing in mind that insurance policies must be construed in the light most favorable to the insured (*Howley v. Scranton Life Ins. Co.*, 357 Pa. 243, 53 A. 2d 613), it is self-evident that the original policy contemplated and included the re-

building of the northern section. Once that work was completed it was only necessary to provide in the renewals for new additions and extensions.

Plaintiff also seeks to rely on reports rendered by it to defendant in which it referred to the northern section as a separate building. Plaintiff wishes to use these reports to show that it never intended to insure the northern section. It is a sufficient answer to that argument to say that self-serving statements such as these reports may not be used for the purpose of proving a different intent from that expressed in an already existent contract.

Plaintiff, having insured the portion of the building destroyed by fire, is liable to defendant for the loss thus incurred.

Order affirmed. Costs to be paid by appellant.

Mr. Justice ALLEN M. STEARNE did not participate in the decision of this case.