## Shaffer v. The Phoenix Insurance Co.

*Henry Thalenfeld*, for plaintiff.

*John L. McDonald*, for defendant.

FLANNERY, J., September 21, 1959.—Trial was had before the court without a jury under the Act of 1874 on complaint in assumpsit, answer and new matter, and plaintiffs' reply.

Plaintiffs, the owners of real estate in the City of Wilkes-Barre, were insured by defendant against physical loss to the premises. On or about October 24, 1957, damages occurred resulting from an underground earth movement. Plaintiffs contend such loss is covered by the policy; defendant denies coverage. Hence the suit. As an additional defense defendant charges that plaintiffs failed to comply with the conditions as to proof of loss.

## Facts

1. Plaintiffs are the owners of premises situate at 255 South River Street in the City of Wilkes-Barre. This is a valuable property situate in a desirable residential district.

2. Plaintiffs are the owners of the anthracite coal strata underlying their property.

3. There has been no mining underneath plaintiffs' property and the coal and rock structure are intact.

4. Overlying the rock and beneath the surface there is an alluvial deposit of unconsolidated material composed of sand, gravel, clay and, in the area in question, quicksand.

5. Mining in the area is removed from plaintiffs' property as follows: Northwest, 300 feet; southerly, 400 feet; northerly, 4,000 feet; easterly, 800 feet.

6. As a result of the mining there was a vertical movement of the earth approximately 2,200 feet distant from plaintiffs' property.

7. As a result of such remote vertical movement of the soil there was an underground lateral movement or pull of the unconsolidated material over and upon which plaintiffs' property stands.

8. As a result of such lateral earth movement plaintiffs' home was damaged to the extent of $3,099.15.

9. The damage began in October 1957, and was promptly reported to defendant's agent who suggested that since the damage was a continuing one, the formal

proof of loss be deferred and the agent so notified his principal.

10. Proof of loss was formally filed with the approval of the agent of defendant on May 22, 1958.

### Discussion

The insurance policy in question is what is known as an "All Risk Policy". The front page of the policy recites the following:

| "Section | Coverages | Limit of Liability |
|---|---|---|
| 1 All risks of physical loss to the property insured except as excluded | A. Dwelling | $25,000.00 |
| | B. Appurtenant Private Structures | 2,500.00 |
| | C. Personal Property | 12,500.00 |
| | D. Additional Living Expenses | 5,000.00" |

The policy further provides as follows:

"PROVISIONS APPLICABLE ONLY TO SECTION 1 DESCRIPTION OF PROPERTY INSURED AND COVERAGES AFFORDED

"COVERAGE A — DWELLING: Coverage A applies to the dwelling building described in the declarations, including its additions and extensions, building equipment, fixtures and outdoor equipment pertaining to the service of the premises (if the property of the owner of the dwelling), while located on the described premises or temporarily elsewhere, and all lumber and materials on the premises or adjacent thereto incident to the construction, alteration or repair of such dwelling."

Coverages B, C and D are not applicable to the instant case because no loss has been sustained thereunder. The policy immediately thereafter contains the following provisions:

"PERILS INSURED AGAINST

"Section 1 of this policy insures against all risks of physical loss to the property insured except as otherwise excluded. . . . ."

The policy then sets forth "LIMITATIONS OF COVERAGE" and there next appears a list of the "EXCLUSIONS" of which the following two are pertinent:

"THIS POLICY DOES NOT INSURE AGAINST:

"UNDER COVERAGES A, B AND D—

"(d) *Loss to retaining walls not constituting part of a building when such loss is caused by* landslide, water pressure, or *earth movements:*" (Italics supplied).

"UNDER COVERAGES A, B, C AND D—

"(g) Loss by termites or other insects; wear and tear; deterioration; smog, smoke from agricultural smudging or industrial operations; rust; wet or dry rot; mould; mechanical breakdown: *settling,* cracking, shrinkage, or expansion *of* pavements, *foundations, walls, floors or ceilings;* unless loss by fire, smoke (other than smoke from agricultural smudging or industrial operations), explosion, landslide, collapse of buildings, water damage, or glass breakage ensues, and this Company shall then be liable only for such ensuing loss;" (Italics supplied).

Inasmuch as this is an "All Risk Policy" every loss suffered by the insured property is covered except that which is *clearly and specifically* excluded. But the loss here was caused wholly by a subterranean earth movement and the exclusion relating to a loss resulting from "earth movement" excludes only "loss to retaining walls not constituting part of a building". Here the loss is solely to the building itself. Hence, at least from this exclusion, the deduction is inescapable that the policy was intended to cover all physical loss to the insured building due to earth movements.

Defendant relies, however, on clause (*g*) which, it contends, provides the exclusion from coverage of the loss involved here. The provision specifically cited by defendant excludes "settling . . . of pavements, foun-

dations, walls, floors or ceilings". But we do not agree that that excludes the type of loss in question here. This clause cannot refer to "earth movement" since that phenomenon is treated above and we are left with the conclusion that the contract here deals with deterioration due to obsolescence, to deterioration resulting from the ravages of time and the vagaries of the weather. And so we return to "earth movement".

The term "earth movement" is a generic one including both vertical and lateral displacements of the earth; whereas "settling" can be defined as the gradual sinking of a structure by the yielding of the ground under its foundation: Webster's New International Dictionary (1938), Second Edition. Thus it is an earth movement of the vertical type. But here the movement has been described as "a lateral movement in the unconsolidated material" upon which plaintiffs' dwelling stands. Accordingly, as we construe the policy, there is no specific provision excluding this type of earth movement.

As was stated in Blue Anchor Overall Co. v. Pennsylvania Lumbermens Mutual Insurance Company, 385 Pa. 394, at pages 397 and 398:

"It is well established that an insurance policy will be construed most strongly against the insurer who has prepared it: MacDonald v. Metropolitan Life Insurance Co., 304 Pa. 213, 155 A. 491; West v. Mac-Millan (and Automobile Underwriters Insurance Co., Garnishees), 301 Pa. 344, 152 A. 104. If there is any doubt or ambiguity as to the meaning of the policy, the doubts or ambiguities will be resolved in favor of the insured: Beley v. Pennsylvania Mutual Life Insurance Co., 373 Pa. 231, 95 A. 2d 202; Howley v. Scranton Life Insurance Co., 357 Pa. 243, 53 A. 2d 613. It is also well settled that if an insurance policy is reasonably susceptible of two interpretations it is to be construed in favor of the insured in order not to defeat,

without plain necessity, the claim to indemnity which it was the insured's object to obtain: Armon v. Aetna Casualty and Surety Company, 369 Pa. 465, 87 A. 2d 302, and the many cases cited therein. Words of common usage in a policy of insurance will be construed in their natural, plain, and ordinary sense, but if technical words are used, they will be construed in their technical sense unless a contrary intention clearly appears: Goldin, The Law of Insurance in Pennsylvania, Vol. 1, Sec. 237 (2nd ed. 1946); Yost v. Anchor Fire Insurance Company 38 Pa. Superior Ct. 594."

Where the insurance and the damage are admitted, as they are here, it is clear that a defense based on an exception or exclusion in the policy is an affirmative one, and the burden is cast upon defendant to establish it: Armon v. Aetna Casualty and Surety Company, supra; Barnes v. North American Accident Insurance Company, 176 Pa. Superior Ct. 294. In such a framework of reference we are constrained to conclude that defendant has failed to meet that burden. It cannot be said that the loss sustained is "clearly and specifically excluded" by the terms of the policy before us and in this respect plaintiffs' legal position must be sustained.

The second defense, viz., failure to file the proof of loss within the terms of the policy contract, seems in effect to have been withdrawn at trial but if not, it too must fall. Plaintiffs conducted themselves in the manner advised by defendant's agent in coöperation with it to facilitate its management of the claim and this was communicated to the principal where it received tacit, if not specific, approval. Subsequently defendant inspected the premises and appraised the loss.

This constitutes a waiver within the well recognized authorities and the belated objection can find no recognition in the law: Arlotte v. National Liberty Insurance Company, 312 Pa. 442; Fedas v. Insurance Com-

pany of the State of Pennsylvania, 300 Pa. 555; Karp v. Fidelity-Phenix Fire Insurance Company, 134 Pa. Superior Ct. 514; Spern v. Globe and Republic Insurance Company, 131 Pa. Superior Ct. 595.

### Conclusions of Law

1. The damages sustained to plaintiffs' premises were covered by defendant's policy contract.

### Verdict

Wherefore, now September 21, 1959, at 3 p. m., verdict is rendered for plaintiffs and against defendant in the sum of $3,099.15 and unless exceptions are filed thereto within 30 days from notice thereof, judgment is directed to be entered by the prothonotary accordingly.