## Powell v. Empire Mutual Insurance Company

574

*W. H. Brown,* for plaintiffs.

*T. P. Monteverde,* for defendant.

BROWN, JR., P. J., February 10, 1961.—The trial of this case was commenced before judge and jury and when all the evidence had been presented by the parties, it was stipulated at bar that the jury be discharged from further consideration of the case, and that the evidence presented before the judge and jury be considered as being presented to the trial judge without a jury and so determined under the rules. Accordingly, the action being in assumpsit, the case was deemed as tried by a judge without a jury as provided by the Act of June 25, 1937, P. L. 2080, 12 PS §695, and rule *270 of the Courts of Common Pleas of Philadelphia.

This action was brought by Ozell Powell and Willie James Powell on a policy of automobile liability insurance issued on June 15, 1956, by defendant, Empire Mutual Insurance Company, to Johnnie Powell. On July 1, 1956, Johnnie Powell was operating the automobile covered by the policy, and Ozell Powell and Willie James Powell were passengers in the car. When the accelerator pedal stuck, the vehicle could not be properly controlled, and it left the highway, causing injuries to plaintiffs. Willie James Powell is the brother of Johnnie Powell, and Ozell Powell is the wife of Willie James Powell. An action in trespass was commenced by plaintiffs against Johnnie Powell in the Court of Common Pleas No. 3 of Philadelphia County as of March term, 1957, no. 235. A complaint in that suit was filed on March 5, 1957, and served on Johnnie Powell on March 7,

1957. Judgment by default was entered on October 31, 1957, for want of an appearance. Thereafter, on September 26, 1958, damages were assessed in favor of Ozell Powell in the sum of $12,000, and in favor of Willie James Powell in the amount of $30,000 against defendant Johnnie Powell. Plaintiffs then brought this suit based on the theory that they are entitled to the benefits of the policy of insurance issued by defendant to Johnnie Powell. A default judgment was taken against defendant in this action for failure to answer the complaint in assumpsit, and subsequently this judgment was opened by the court.

Defendant asserts as a defense to this suit that the policy was voidable and properly avoided because Johnnie Powell's insurance, which was carried by another insurer, was canceled less than 12 months prior to the issuance of defendant's policy, and that this was contrary to an express condition of the latter policy. It is further contended on behalf of defendant that even if the policy were not properly avoided, the policy on its face bars any recovery by Willie James Powell because he is a brother of Johnnie Powell and limits the recovery by Ozell Powell to $5,000 plus interest. Moreover, defendant claims that plaintiffs are barred from recovery because of the failure of Johnnie Powell to defend himself in plaintiffs' suit against him.

Substantial reliance is placed by defendant on the terms of a so-called "PT 100 endorsement," which was on a sheet of paper attached to the policy when placed in evidence at the trial. Plaintiffs deny that this endorsement was a part of or attached to the policy when it was issued or at the time of the accident. Since both the ground for avoiding the policy and the bar to recovery by a brother of the insured are included in this endorsement, it is necessary to determine whether it formed a part of the insurance

contract involved in this case. At the trial, Jerome Boris, who was, at the times material in this case, an authorized agent of defendant company, and whose organization issued the policy in question to Johnnie Powell, was called as a witness on behalf of plaintiffs, as well as defendant. He said that the endorsement was attached to the policy at the time of its issuance to Johnnie Powell. He also said that the copies that were made of the policy in his office contained notations which indicated that the PT 100 endorsement was attached, and that all policy forms that his firm received from defendant had such an endorsement. In addition, the face of the policy in evidence has two notations on it which state *"SPE-CIAL NOTICE.* This policy contains a special limiting endorsement. Read it carefully!" This witness said that these stamped notations were on the face of the policy at the time it was issued and when the accident occurred. An employe of Boris, corroborating his testimony, stated that she typed policies, that the PT 100 endorsement was always attached to the policy forms, and that the fact that there was a notation typed on to the face of the policy referring to the endorsement indicated that the endorsement was actually attached. Two other witnesses, who were agents of defendant at the time of the issuance of the policy in question, also testified that all of defendant's policies, which were written during the period of time material in this case, contained such an endorsement. Defendant's claims manager said that the policy had the endorsement when he examined it after the accident.

Plaintiffs, on the other hand, rely on the testimony of Willie James Powell that he read and examined the entire policy shortly before the accident, and that at that time it did not contain the endorsement nor were the special notices affixed to the face of the

policy. It is significant that the insured Johnnie Powell was not called by plaintiffs to testify as to the presence or absence of the endorsement on the policy at the time of the delivery of the policy to him. Considering all of the evidence on this subject, it must be concluded and found as a fact that the endorsement was attached to and a part of the policy of insurance when issued to Johnnie Powell.

Since the endorsement is found to have been part of insurance contract, its provisions must be construed and analyzed in the light of the proofs presented by the parties and the pertinent principles of law. On the endorsement, it is stated that "notwithstanding any provision to the contrary set forth in the policy to which this endorsement is attached, NO COVERAGE IS AFFORDED BY SAID POLICY: . . . if Paragraph 7 under 'Declarations' in the policy does not set forth any exceptions, but during the 12 months prior to the effective date of the policy, an insurer has in fact canceled any automobile (either liability or collision) insurance issued to the named insured or has in fact declined to issue such insurance. The sole obligation of the Company in such case shall be to return the premium paid by the insured. THERE SHALL BE NO COVERAGE AND THIS POLICY SHALL BE ABSOLUTELY VOID UNDER SUCH CIRCUMSTANCES EVEN IF THE INSURED HAS GIVEN NOTICE OF AN EXCEPTION, UNLESS SUCH NOTICE IS GIVEN TO THE COMPANY AT ITS HOME OFFICE BY REGISTERED MAIL. NOTICE TO AN AGENT OF THE COMPANY SHALL NOT BE SUFFICIENT."

On the face of the policy in paragraph 7 under "DECLARATIONS," there is printed "During the past twelve months no insurer has canceled any automobile insurance issued to the named insured, nor

declined to issue such insurance, except as stated herein:" and following this, there is typewritten "no exceptions."

A policy of insurance may be avoided where there is "a misrepresentation of a material matter, a breach of warranty by the insured, or a fraudulent concealment of a material fact": 19 P. L. Encyc. Insurance §211. In this case, however, it was not shown that the insured, Johnnie Powell, was ever asked about the matter of prior cancellation of automobile insurance coverage by or on behalf of defendant. Hence, all questions of bad faith, misrepresentations of fact, and false statements are not determinative of this aspect of the case. Defendant relies upon the principle that where a provision of an insurance policy is made a condition precedent, its effect is different from that of a representation or a warranty. Under such a provision, there is no insurance coverage in effect until the condition is fulfilled, and consequently, if there is a breach of the condition precedent, the policy is rendered void even though there be no misrepresentations or warranties by the insured: Smolinsky v. Metropolitan Life Insurance Company, 149 Pa. Superior Ct. 72, 74-5. Thus, where a policy of life insurance provides that if the insured had been attended by a physician for any serious disease within two years prior to the date of the policy and such medical attention or disease is not specifically recited on the policy, the liability of the insurer is limited to a return of the premiums paid, for the policy affords no coverage in the event of a prior illness, apart from any false representations or warranties by the insured: DeRose v. Metropolitan Life Insurance Company, 132 Pa. Superior Ct. 212, 218-19.

In order to establish its right to avoid the policy under the condition contained in the endorsement, defendant sought to prove that Johnnie Powell had

previously been insured by the Service Fire Insurance Company of New York, and that his policy of insurance against loss by collision with that company had been cancelled "during the 12 months prior to [June 15, 1956] the effective date" of the present policy, after an accident in which his automobile was badly damaged in July 1955. In determining the effect to be given to the evidence bearing on this question, it is necessary, of course, to consider the principles of law applicable to the construction of the terms of insurance policies.

"It is well established that an insurance policy will be construed most strongly against the insurer who has prepared it: MacDonald v. Metropolitan Life Insurance Co., 304 Pa. 213, 155 A. 491; West v. Macmillan (and Automobile Underwriters Insurance Co., Garnishees), 301 Pa. 344, 152 A. 104. If there is any doubt or ambiguity as to the meaning of the policy, the doubt or ambiguities will be resolved in favor of the insured: Beley v. Pennsylvania Mutual Life Insurance Co., 373 Pa. 231, 95 A. 2d 202; Howley v. Scranton Life Insurance Co., 357 Pa. 243, 53 A. 2d 613. It is also well settled that if an insurance policy is reasonably susceptible of two interpretations it is to be construed in favor of the insured in order not to defeat, without plain necessity, the claim to indemnity which it was the insured's object to obtain: Armon v. Aetna Casualty and Surety Company, 369 Pa. 465, 87 A. 2d 302, and the many cases cited therein": Blue Anchor Overall Co. v. Pennsylvania Lumbermens Mutual Insurance Company, 385 Pa. 394, 397.

Defendant's evidence to prove the cancellation of the earlier automobile insurance policy of Johnnie Powell consisted of the testimony of the branch manager of the firm which financed the purchase of the automobile in 1955. This witness did not purport to

580

have any personal knowledge of any of the transactions about which he testified. Moreover, it is extremely doubtful that the records he produced would qualify as evidence under the Uniform Business Records as Evidence Act of May 4, 1939, P. L. 42, 28 PS §91b. There was no showing as to who actually made the records, that the person who made them had knowledge of the facts set forth, or that the records were made contemporaneously with the acts to which they relate: Hagopian v. Eskandarian, 396 Pa. 401, 405-06. In any event, even if the records produced did in fact constitute proper proof, they are not evidence which would support a finding that the policy in issue in the present case was not in force at the time of the accident because of the breach of a condition. According to the testimony of this witness for defendant, Johnnie Powell's car was a total loss as a result of the collision in which he was involved in 1955, and the car was repossessed. He also said that in the event of a repossession and the failure to replace the car, the insurance would automatically be terminated. Furthermore, he testified that the finance company collected a loss claim on account of the damage to the car, that the finance company requested that the insurance be discontinued and obtained a refund of unearned premium on that account which was credited to Johnnie Powell. Therefore, even if all of the evidence be regarded as proper proof, and even if all of the inferences were drawn in defendant's favor, the testimony of the finance company manager merely showed that when a policy, which was for its protection as a lender, had served its purpose, and when there was no longer any need for the policy, the company took steps to obtain a refund of part of the premium. Besides, there was no liability coverage in that policy. It is clear that the collision insurance carrier on Johnnie Powell's car in 1955 did not, on

its own motion, terminate the insurance coverage. There is no question that if the insurance policy was in fact cancelled, it was done at the request of the finance company in order to benefit Johnnie Powell by obtaining for him a refund of premium on insurance no longer needed. Actually, since the car was a total loss and repossessed, Johnnie Powell had at that time no automobile to be insured.

As pointed out above, the condition, relied upon by defendant, is breached when "an insurer has in fact canceled any automobile . . . insurance issued to the named insured or has in fact declined to issue such insurance." When this provision is viewed in the light of the principles applicable to the construction of insurance contracts, it is apparent that it is not controlling in this case. A reasonable interpretation of the policy indicates that the condition is breached if, and only if, the insurance is canceled by, and because of the decision of, the insurance company. Where the company was or would have been perfectly willing to continue to keep the policy in force, the provision has no application. If this were not so, then anytime an insured chose to terminate his automobile insurance coverage and purchase a policy from defendant with the PT 100 endorsement attached, the insured would be obliged to give notice of that fact to the company at its home office by registered mail, or be held to be without any insurance coverage. Such a construction of the condition seems patently absurd. The conclusion is thus reached that the condition was not breached and that the policy was not void. Therefore, Ozell Powell is entitled to recover from defendant the sum of $5,000 in accordance with the policy limits of liability for bodily injury to each person.

In the endorsement, there is a provision that there is no coverage under the policy for bodily injury liability where the injury is sustained by a brother

of the insured. Plaintiffs contend that the entire endorsement must be held to be inoperative because it contains a provision inconsistent with the terms of the policy, in that the endorsement precluded coverage while the vehicle was being operated by any person less than 25 years of age, while it appears from the face of the policy that the premium was charged in accordance with the rates applicable where there is a driver under 25 years old. The endorsement itself provides that conditions set forth therein are "notwithstanding any provision to the contrary set forth in the policy to which this endorsement is attached." Indeed, there is no inconsistency in the policy with the condition in question. Merely because there may be some conflict in portions of the policy not involved in the instant case is no reason to disregard the entire endorsement, including all conditions which do not conflict with any part of the policy itself.

It was shown at the trial that the premium charged by defendant was in excess of the coverage actually set forth in the policy. It would have been correct for a policy where another driver, under 25 years of age, sometimes drove the car. Johnnie Powell testified that his younger brother, Floyd Powell, who was less than 25 years old, occasionally drove his automobile. The insurance salesman, who obtained the information required for the issuance of the policy, testified that he was told that another driver under 25 years old drove the car, and that this was the reason for the rate charged. There is no doubt that the rate charged was excessive for the protection provided by the policy. However, plaintiffs have supplied no authority for the extension of the insurance coverage which would have justified the charge actually made. They may recover the excessive premiums charged and paid. But such a claim is not involved in the present case. According to defendant, there was a mistake

in not including the younger brother of Johnnie Powell as an additional insured under the policy. However, this is no basis for increasing the policy limits for liability coverage.

Defendant also contends that, there may be no recovery because of the failure of Johnnie Powell to defend against the claims of plaintiffs in their suit against him. He testified that he attempted to obtain the services of an attorney, and that he could not afford to pay the fee that was required. There is no merit in the position of the insurance company in this regard.

Under the terms of the policy, plaintiff Ozell Powell is entitled to recover interest on the sum of $12,000, the amount of the damages assessed in her favor against Johnnie Powell, since September 26, 1958, the date of the assessment. The provision in the policy having to do with "Defense, Settlement, Supplementary Payments" states that "As respects the insurance afforded by the other terms of this policy under coverages A and B the company shall: . . . (c) pay all expenses incurred by the company, all costs taxed against the insured in any such suit and all interest accruing after entry of judgment until the company has paid, tendered or deposited in court such part of such judgment as does not exceed the limit of the company's liability thereon."

A policy, which contained a similar provision, was construed by the United States District Court for the Eastern District of Pennsylvania to obligate the insurance company to pay the interest on the full amount of the damages and not merely on the sum within the policy limits. This ruling was affirmed on appeal by the circuit court: Underwood v. Buzby, 136 F. Supp. 957, affirmed 241 F. 2d 303.

Therefore, the trial judge finds that plaintiff, Ozell Powell, is entitled to recover the sum of $5,000 from

defendant, Empire Mutual Insurance Company, with interest on $12,000 from September 26, 1958, and all costs taxed against Johnnie Powell, and in favor of defendant, Empire Mutual Insurance Co., against plaintiff, Willie James Powell, and concludes that judgments be entered accordingly.

The prothonotary will forthwith give notice of the filing of this decision to all parties or their attorneys, and that if exceptions are not filed thereto within 20 days after the date of filing, final judgment will be entered by him upon the decision, as of course, on praecipe at the expiration of said period.