## Reese v. Northern Insurance Co. of New York

*Frank R. Sack*, for plaintiff.

*Richard C. Witt*, for defendant.

BROWN, J., October 26, 1964.—Plaintiffs, Burton Reese and Lissi Reese, his wife, owned a frame dwelling house at 585 Rosedale Street in Pittsburgh, Pa. On or before April 21, 1961, plaintiffs purchased a homeowners insurance policy from defendant, Northern Insurance Company of New York. This policy insured plaintiffs against loss by certain named perils, including fire, and was effective for a period of three years from April 21, 1961, to April 21, 1964.

On or about January 2, 1963, while the said policy was in full force and effect, plaintiffs' dwelling was destroyed by fire of accidental origin. After negotiations between plaintiffs and defendant's adjuster, plaintiffs agreed to take $14,600 in partial settlement of their claim. Of this amount, $5,600 was accepted as payment for unscheduled personal property, for additional living expenses and for removal of debris. The balance of $9,000 represented actual cash value of the dwelling house as depreciated by the adjuster, and agreed to by plaintiffs. However, plaintiffs in accepting the $9,000 reserved the right to recover under the replacement cost endorsement the difference between the $9,000 actual cash value and the replacement costs of the dwelling without deduction for depreciation, a sum agreed by both parties to be $4,230.47. Defendant denied liability under the replacement cost clauses and this litigation followed.

As there are no facts in dispute, the parties stipulated the issues for trial without a jury.

The sole question for this court to decide is whether the replacement cost provisions of the policy, in effect at the time of the loss, can be utilized without actual replacement or rebuilding.

At the outset of this opinion the general rules of construction of contracts, especially of insurance contracts, should be reiterated. "Any ambiguity in the

terms of a policy must be construed against the insurance company in order not to defeat, without plain necessity, the loss insured against": Mott v. Firemens Insurance Co. of Newark, 188 Pa. Superior Ct. 359, citing Barnes v. North American Accident Ins. Co., 176 Pa. Superior Ct. 294.

In Marshall v. Safeguard Mutual Fire Ins. Co., 202 Pa. Superior Ct. 161, the court quoted at length from Gruskin v. The Hartford Mutual Ins. Co., 29 D. & C. 2d 63:

"It is well established that an insurance policy will be construed most strongly against the insurer who has prepared it: MacDonald v Metropolitan Life Insurance Co., 304 Pa. 213, 155 Atl. 491; West v. MacMillan (and Automobile Underwriters Insurance Co., Garnishees), 301 Pa. 344, 152 Atl. 104. If there is any doubt or ambiguity as to the meaning of the policy, the doubts or ambiguities will be resolved in favor of the insured: Beley v. Pennsylvania Mutual Life Insurance Co., 373 Pa. 231, 95 A. 2d 202; Howley v. Scranton Life Insurance Co., 357 Pa. 243, 53 A. 2d 613. It is also well settled that if an insurance policy is reasonably susceptible of two interpretations it is to be construed in favor of the insured in order not to defeat, without plain necessity, the claim to indemnity which it was the insured's object to obtain: Armon v. Aetna Casualty and Surety Company, 369 Pa. 465, 87 A. 2d 302, and the many cases cited therein; Blue Anchor Overall Co. v. Pennsylvania Lumbermens Mutual Insurance Company, 385 Pa. 394."

Also, as was repeated in Pritchard v. Wick, 406 Pa. 598, citing from N. D. Ivey Co. v. Franklin Associates Inc., 370 Pa. 225, 231:

"It is a rule of universal application that in construing a contract each and every part of it must be taken into consideration and given effect if possible, and that the intention of the parties must be ascer-

tained from the entire instrument. An interpretation will not be given to one part of a contract which will annul another part of it."

Plaintiffs in this case claim that the policy's replacement cost provisions entitle them to greater indemnity for their loss than the actual cash value as determined after deduction for depreciation, i.e., $9,000. If the replacement cost provisions are susceptible of two reasonable interpretations, as plaintiffs contend, the aforesaid rules of construction must apply in plaintiffs' favor, and the agreed-upon difference of $4,230.47 will have to be paid.

The pertinent parts of the policy are:

"5. CONDITIONS

. . .

"e. Replacement Cost:

. . .

"(2) If at the time of loss the limit of liability for the dwelling in Coverage A of this policy is eighty per cent (80%) or more of the full replacement cost of the dwelling insured, Coverages A and B only of this policy are extended to include the full cost of repair or replacement without deduction for depreciation."

. . .

"(5) This Company's liability for loss under Coverages A and B of this policy, including this replacement cost provision, shall not exceed the smallest of the following amounts: (a) The limit of liability for Coverage A or B, whichever applies; (b) The replacement cost of the building structure or any part thereof identical with such building structure on the same premises and intended for the same occupancy and use; (c) The amount actually and necessarily expended in repairing or replacing said building(s) or any part thereof intended for the same occupancy and use."

. . .

"(7) The Insured may elect to disregard this replacement cost provision in making claim under this

policy, but such election shall not prejudice the Insured's right to make further claim within reasonable time after loss for any additional liability brought about by this replacement cost provision."

Plaintiffs contend that the language of subparagraph (2) expressly allows them to recover the additional agreed-upon sum of $4,230.47. They say that for defendant to take away what subparagraph (2) has already unquestionably allowed, it must do so not by implication, but most specifically. On the other hand, defendant argues that subparagraph (5) clearly limits the liability of the insurance company under the replacement cost provisions to the smallest of three possible amounts. It argues that as the formula found at (5) (c) applied in this case results in a zero figure, the replacement cost provisions cannot here apply and plaintiffs can only recover the actual cash value of the building as it existed prior to the loss. In short, unless actual rebuilding or replacement is undertaken, the replacement cost allowances cannot be utilized.

Unfortunately case law dealing with such replacement cost endorsements is very scanty. No Pennsylvania decisions interpreting insurance clauses as are at issue here have been found. This particular type of replacement cost liability seems only to be found in the recently adopted multiple coverage "homeowner" type policy upon which little litigation has reached the courts. The only truly pertinent decision this court has found comes from New Jersey. In the case of Ruter v. Northwestern Fire and Marine Ins. Co., 72 N. J. Super. 467, 178 A. 2d 640 (1962), the appellate division of the New Jersey Superior Court construed a replacement cost provision very similar to the one before this court. In that case the insured sold the damaged building to a third person, who thereafter rebuilt in a manner materially different from the original structure. The insured then sought to recover the re-

placement cost allowance. Payment was refused by the insurer on two grounds, the first being that subparagraph (6) of the endorsement stated, "This company shall not be liable for . . . (b) Any loss under this endorsement unless and until the damaged property is actually repaired or replaced on the same premises with due diligence and despatch, and, in no event, unless repair or replacement is completed within a reasonable time after such loss." This explicit clause was omitted in plaintiffs' replacement cost endorsement and it is therefore, in the instant matter, irrelevant.

The other defense of the insurance company in Ruter, supra, is identical to defendant's. In each endorsement subparagraph (5) contains essentially the same limitations on the amount of the insured's recovery. The appellate division of the New Jersey Superior Court in Ruter failed to support the insurer-defendant on the ground that subparagraph (5)(c) was only applicable when the building was replaced on the same premises with one intended for the same occupancy and use. As the building erected by Ruter's grantee was structurally different and intended for a different occupancy and use, the policyholder was not bound by the formula therein stated. Unfortunately, the New Jersey decision does not say whether that construction depended upon the fact that the building had been actually replaced in altered form, albeit by a third party. If this decision resulted from the fact that a new structure was built, then the disparity in facts between Ruter, supra, and the instant case readily leads to material distinguishment so as to defeat plaintiffs' plea. Plaintiffs have not rebuilt in any form.

On the other hand, if the construction of clause (5)-(c) in Ruter would be followed, even if no rebuilding of any type was thereafter completed, then this court must reluctantly and respectfully disagree with the New Jersey Court as to what a reasonable interpreta-

tion of (5) (c) should be. With full cognizance of the canonized rules of construction applicable to insurance policies, clause (5) (c) can only be reasonably interpreted as a limit upon the liability of the insurer. Three formulae for determining the insurance company's liability are clearly described by paragraph (5), the smallest to be the amount of indemnity; clause (5) (a) allows no recovery over the limit of liability of coverages A and B, i.e., property value, which in this case is $16,500. In (5) (b) the replacement cost of an identical building, here agreed to be $13,230.47, can be the limit of liability if smaller than (5) (a). Clause (5) (c) allows the insured to replace, but gives the leeway of allowing construction on other premises, with substantial changes in design, so long as the new structure is intended for the same occupancy and use. If the insured expended less for his replacement building than rebuilding in a manner identical to the cost of the original, then (5) (c) would apply. If the insured chose to improve upon what was destroyed, (5) (a) or (5) (b) would set the limit of liability for the insurer. Either way, what the insured can collect under the replacement cost endorsement is inextricably dependent on paragraph (5). The literal meaning of "This Company's liability for loss under Coverages A and B of this policy, including this replacement cost provision, shall not exceed the smallest of the following amounts . . ." is too clear to allow any other reasonable interpretation.

As the primary purpose of allowing the insured more than actual cash value under the replacement cost endorsement is to enable the insured to replace, to say actual replacement is required before a sum greater than actual cash value can be paid is in keeping with this State's public policy that an insured may not profit from his loss. Insurance policies are not gambling contracts from which may erupt gainful windfalls. The

dangers inherent in policies which set forth liability limits far beyond the insured's insurable interest are obvious. To allow plaintiffs an additional $4,230.47 under this policy when they have been paid $9,000, ·the building's actual cash value, as they elected, and when no replacement has been contemplated, would be a tortious and unintended construction of what to us is a reasonable and clear contract.

We will therefore enter judgment for the defendant.

*Order of Court*

And now, this October 26, 1964, after hearing arguments of counsel and submission of briefs on matters of law, judgment is entered in favor of defendant.