## Stevens v. General American Life Insurance Co.

*Wray G. Zelt,* for plaintiff.

*White & Jones,* and *McCreight, Marriner & Mc-Creight,* for defendant.

SWEET, P. J., September 13, 1965.—This action in assumpsit for the proceeds of insurance was tried on a stipulated set of facts. They are simple. On January 17, 1963, the General American Life Insurance Company issued various group insurance policies to the Construction Industry Insurance Fund of Western Pennsylvania. One of these was a group accidental death and dismemberment policy which covered, inter alia, the members of Local 1441, Canonsburg, United Brotherhood of Carpenters and Joiners. Elwood F. Stevens, plaintiffs' decedent, was a member of this union and, hence, an insured. Unfortunately, on Sunday, November 26, 1961, the insured was moonlighting. This took the form of a job for Joseph Gulla. Stevens signed a contract with him which is reproduced in its Spartan entirety:

"Nov. 18, 1961

"I, *Elwood Stevens,* agree to do the following carpenter work:

"PLACE   Joe Gulla home

"SUM   $600.00 in three installments

"1. Install all sides on home.

"2. Install all celetex.

"3. Install all main partitations. (sic)

"4. Install roof, gutters, and set windows.

　　　　　　　"/S/  Joseph Gulla
　　　　　　　"/S/  Elwood Stevens
　　　　　　　"/S/  Wilbur C. Holt"

While on the roof of Gulla's house in pursuance of this contract, Stevens used an electric saw on the roof and was electrocuted when his head touched an overhead high tension line of the West Penn Power Company. The problem for our decision comes from the terms of the policy. It provides:

"AND BY THIS POLICY AGREES TO PAY in the manner specified herein and subject to the terms, conditions and limitations hereof, immediately upon receipt of due proof that any Employee (as that term is herein defined) while insured hereunder shall have sustained bodily injuries solely through external, violent and accidental means, *excluding such injuries arising out of or in the course of employment . . .*" (Italics supplied.)

It is necessary for us to determine what the word "employment" means in this context to ascertain if the exclusion applies to Stevens.

The policy is the contract between the parties, and it is elementary that we must seek to determine what the parties meant by using "employment" in this connection. Did they mean employment as compared with unemployment, employment contrasted with independent contract, employment as distinguished from moonlighting, or employment as distinguished from non-

vocational activity? The cases are legion which distinguish employment from independent contract (e.g. Department of Labor and Industry v. Aluminum Cooking Utensil Company, 368 Pa. 276 (1951); Harrison v. Collins, 86 Pa. 153 (1878), etc.) but this is not enough for our purposes here, nor do dictionary definitions or workmen's compensation cases carry us very far. In approaching this problem of semantics which has become so significant to the parties, we have some guidance from the Supreme Court in Blue Anchor Overall Co. v. Pennsylvania Lumbermen's Mutual Insurance Company, 385 Pa. 394 (1956):

"It is well established that an insurance policy will be construed most strongly against the insurer who has prepared it: MacDonald v. Metropolitan Life Insurance Co., 304 Pa. 213, 155 A. 491; West v. MacMillan (and Automobile Underwriters Insurance Co., Garnishees), 301 Pa. 344, 152 A. 104. If there is any doubt or ambiguity as to the meaning of the policy, the doubts or ambiguities will be resolved in favor of the insured: Beley v. Pennsylvania Mutual Life Insurance Co., 373 Pa. 231, 95 A. 2d 202; Howley v. Scranton Life Insurance Co., 357 Pa. 243, 53 A. 2d 613. It is also well settled that if an insurance policy is reasonably susceptible of two interpretations it is to be construed in favor of the insured in order not to defeat, without plain necessity, the claim to indemnity which it was the insured's object to obtain: Armon v. Aetna Casualty and Surety Company, 369 Pa. 465, 87 A. 2d 302, and the many cases cited therein. Words of common usage in a policy of insurance will be construed in their natural, plain, and ordinary sense, but if technical words are used, they will be construed in their technical sense unless a contrary intention clearly appears: Goldin, The Law of Insurance in Pennsylvania, Vol. I, Sec. 237 (2nd ed. 1946); Yost v. Anchor Fire Insurance Company, 38 Pa. Superior Ct. 594".

Certain other provisions of the policy throw some light on the meaning of the word. For instance, it appears that "the insurance afforded by this policy is not in lieu of, nor does it affect any requirements for coverage by Workmen's Compensation Insurance."

In the definitions section of the policy, we find no definition of employment, but we do find the words employe and employer defined.

The term "Employer" is defined "to mean and include an Employer who has in effect a collective bargaining agreement requiring periodical (sic) payments to the Construction Industry Insurance Fund of Western Pennsylvania".

The term "Employee" is given the following voluminous definition: "(a) A member of a 'union' (as that term is herein defined) who is employed by an 'Employer' (as that term is herein defined). (b) All other Employees of an 'Employer' who elects in writing to cover all their such other Employees, including the individual proprietors of a sole proprietorship and the individual partners of a partnership where such sole proprietorship or partnership is an Employer, provided such other Employees are not insured under any other group plan to which the Employer contributes any part of the cost. (c) Officers and other employees of the Unions who are members of such Unions".

Strangely, at the hearing neither side made reference to these definitions. The company sought to impose on this case various definitions of employment chosen from a variety of cases construing the word "employment" for a variety of purposes; i. e., Sunday law enforcement, agency, unemployment compensation. The plaintiff pressed strongly the presumption of construction set forth in Blue Anchor Overall Co., supra, and similar cases. It is my judgment that the definitions of "employer" and "employee" furnished in the policy give the surest guide to the intention of

the parties. Joe Gulla certainly is not an "employer" as defined herein. Stevens was not working as a union member for union wages under the terms and conditions imposed by collective bargaining agreements on carpenter work in the Pittsburgh district. The unions which belong to this insurance scheme are listed in the policy and supplements thereto. It seems to me, therefore, that the employment contemplated in the policy is work in the construction industry performed when one who fits the definition of an employer has hired one or more people who meet the definition of an employe.

Under these circumstances, it seems to me only fair to conclude that Stevens was not engaged in employment at the time of his death. The following language from Lovering v. Erie Indemnity Company, 412 Pa. 551 (1963) is helpful:

"The drafters of insurance policies, while undoubtedly intending to be fair with their policyholders (who, after all, are their customers), have a reason, nevertheless, to see to it that every possible avenue of escape, from what they regard to be unjust payment, is paved with language over which there can be no stumbling as to the conditions of nonliability. The most meticulous study of the policy here in controversy fails to reveal *that* clear thoroughfare of immunity which the insurance company speaks of, but cannot point to. Since it is hornbook law that insurance policies are to be construed most strictly against those who write the policy, we cannot possibly read into the policy here involved what is simply not there".

To accept the most extreme of the company's arguments; i. e., "A person may as well be 'employed' about his own business as in the transaction of the same for a principal" (trial brief, p. 4), would mean that the insured was uninsured except in his sleep, in sloth, in idleness, or at the movies. I hesitate to

believe that the bargainers for union and for management would have bought so little with their premium dollars.

## VERDICT

AND NOW, September 13, 1965, in accordance with the foregoing opinion, I find in favor of plaintiff and against defendant in the amount of $3,000 plus legal interest, plus costs.