West *v.* MacMillan (and Automobile Underwriters Insurance Co., Garnishees, Appellant).

Argued April 24, 1930. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Maurice Stern,* with him *James A. Walker,* for appellant.—The contract is one of indemnity against damages and not a contract of indemnity against liability and therefore the answer was sufficient to prevent judgment: Weiss v. Levey, 69 Pa. Superior Ct. 359; McMillin v. Titus, 222 Pa. 500.

The better considered cases favor the view construing a policy containing a "no action" clause as one of indemnity against damage: Sanders v. Ins. Co., 72 N. H.

485; Am. Indemnity v. Felbaum, 263 S. W. 263; Allegheny City v. Ry., 159 Pa. 411.

Pennsylvania law recognizes the distinction between policies containing a "no action" clause requiring the payment of money by the assured and construes them to be policies of indemnity against damage and therefore the answer of garnishee was sufficient: Pfeiler v. Cement Co., 240 Pa. 468; Rose v. General Accident Co., 296 Pa. 206; Malley v. Indemnity Co., 297 Pa. 216; Moses v. Ferrell, 97 Pa. Superior Ct. 13.

*Thomas James Meagher,* for appellee.—The policy of casualty insurance involved was attachable by plaintiff on judgment against defendants when its true construction by the court below was that it was a liability policy and not an indemnity policy: Rose v. General Accident Co., 296 Pa. 206; Malley v. Indemnity Co., 297 Pa. 216; Moses v. Ferrell, 97 Pa. Superior Ct. 13.

OPINION BY MR. JUSTICE KEPHART, June 21, 1930:

Appellee recovered a judgment for personal injuries, and issued an attachment execution, summoning appellant (the insurance company) as garnishee. The latter denied liability under the policy because the insured had not actually paid the judgment found against him for damages resulting from his negligence in the operation of his car. The court below denied appellant's claim and entered judgment for appellee. Appellant makes the same contention here which it did in the court below,— that no liability attaches to the insurer until the insured has actually paid the judgment found against him.

The pertinent clause on which the claim is based is as follows: "No action shall lie against the [company] ......to recover for any loss......unless brought by the subscriber [the insured] himself, to recover for moneys actually paid by him in legal tender of the United States to the satisfaction of a final judgment after trial of the issue; and unless such action be

brought within two years after the occurrence causing the loss or damage or within two years from such a final judgment." In other words, when the loss has resulted in a judgment, and he has paid the judgment, the company becomes liable and not otherwise.

Insurance policies may be grouped under two general heads. Those which insure against liability, sometimes termed "liability contracts," and those which indemnify against damage or loss or "indemnity contracts." There is not much difficulty with the first class. The policy may be enforced when the insured becomes liable for a loss or damage against which an insurance covenant runs: Fritchie v. Millers Extract Co., 197 Pa. 401. The second class is the more difficult in determining the liability of the insurer; ordinarily the insured cannot enforce the policy until he has suffered an actual loss (Pfeiler v. Penn Allen Portland Cement Co., 240 Pa. 468), but there are instances where a strict indemnity contract may become modified by subsequent acts.

Where a contract contains a clause defining liability as being an indemnity against loss or damage arising or resulting from the happening of a given event, the covenant of indemnity is not broken until the indemnitee has suffered a loss against which the covenant runs (Wicker v. Hoppock, 73 U. S. 94, 99; Rose & Son v. Zurich General Accident Co., 296 Pa. 206), and, generally speaking, an action cannot be sustained until that liability is discharged by payment, whether before or after the final judgment. When such clause is followed by a "no action" clause, as quoted above, as in the Pfeiler Case, supra, it does not change the meaning of indemnity; the effect of the "no action" clause is to rewrite what is ordinarily understood by indemnity, except as it defines the manner and time for payment. But where in such an indemnity contract a right is expressly given to the indemnitee's claimant to sue, if and when the indemnitee is insolvent, the happening of that condition, insolvency, alters the character of the policy

by modifying the normal meaning of indemnity: Rose & Son v. Zurich General Accident Co., supra. Where an indemnity contract contains provisions by which the absolute control and determination of the loss may be taken from the indemnitee by the company's assuming entire charge of the defense, the company waives its right to insist on a literal enforcement of the indemnity contemplated by the contract (Malley v. American Indemnity Co., 297 Pa. 216; Moses v. Ferrell et al., 97 Pa. Superior Ct. 13; Patterson v. Adan, 119 Minn. 308, 138 N. W. 281), and an action may be sustained by an indemnitee when the loss has been determined by final judgment. The reason for the above conclusion is that the insurer has voluntarily adopted the insured's liability. Having safeguarded its own interests by ascertaining, through legal channels, that a fair loss has been sustained, by its conduct of the trial, it is estopped from denying its own liability and cannot prevent the indemnitee from recovering, though the indemnitee's liability has not been discharged by payment. One of the material reasons for giving to indemnity its strict definition was to establish an actual as well as a potential loss; the trial of the issue enabled this to be done. It excluded the idea of fake claims as well as profits; actual loss was what the indemnity provided against. It is not necessary that the casualty company avail itself of this right of defense: Rose v. Zurich General Accident Co., supra. It was shown in the Malley Case, supra, how a final judgment against an individual was an actual as well as a potential loss within the meaning of that term in the policy.

The policy now under consideration contains, in addition to the "no action" clause, the following: "The company agrees to indemnify the subscriber......against loss resulting directly from the manipulation or use of any automobile......the exchange [the company] will, at its own cost defend, in the name and on behalf of the subscriber,......suits covered in clauses four and five."

The company exercised its right to defend the action for damages, appearing by counsel, who conducted the trial.

If the clause concerning the assumption of defense had the effect of reducing or modifying the ordinary meaning of indemnity and loss, will the "no action" clause add anything to the contract? We stated in the Malley Case: "Where the policy, indemnifying insured against loss arising out of legal liability, provides that the insured shall immediately notify the company in case of injury and the company will defend all suits growing out of injuries, in the name of the insured [which it did], and insured will not settle any claim without consent of the company, it is usually held to be a policy of indemnity against liability,......and is not a mere contract of indemnity against damages." Every element mentioned above is present in the case before us and consequently the rule just stated controls. Contracts should be so construed that the dominant purpose of the parties is not frustrated by technical rules of construction.

Doubtful or ambiguous language should be interpreted with this end in view, and, if necessary, more strongly against the writer (32 C. J. 1147; Krebs v. Life Ins. Co., 249 Pa. 330), and this is especially true in insurance contracts.

At the beginning of the insurance policy the company impresses the fact that it insures and indemnifies against loss resulting from the manipulation of any automobile to the extent of ten- and twenty-thousand-dollar limits for any one accident: "In addition to these limits, however, the exchange [insurance company] will also pay the cost and expense attendant upon the investigation, adjustment and settlement of claims, all costs taxed against the subscriber or the bailees in any legal proceedings defended by the exchange as provided in condition B, and all interest accruing after entry of judgment upon such part thereof as shall not be in excess of the exchange's liability as herein expressed; and such

immediate surgical relief as is imperative at the time of the accident." Here is an unqualified promise to pay not only to the limit of the sums first mentioned above, but the other items of expense. There is no limit as to time nor is there any condition attached; nor is there anything to indicate to the insured that the advancement of these amounts would not be speedily paid; but tucked away in the back of the policy under paragraph "S" appears their "no action" clause. It is the joker of the policy and has been written out by many legislatures including (it was stated at the argument) our own; when read in connection with the paragraph just quoted, we find that all of these items must be reduced to a final judgment and paid as such in legal tender; some of these expenses cannot be included in a judgment, but recovery is limited to the satisfaction of that final judgment, after a trial of the issue. When the company will, if ever, pay the other expenses does not appear, yet "no action" can be taken therefor. The preceding part of the "no action" clause ties the insured to recover for moneys actually paid in the satisfaction of the judgment. Then "no action lies unless brought within two years after the occurrence causing the loss or damage, or within two years from final judgment." The "no action" paragraph and the insurance paragraphs above mentioned, when read together, are doubtful and ambiguous, especially in view of the general intent of the policy, which is to pay when a loss was actually found to exist. They leave in doubt what is to be paid, or when an action may be brought to compel payment.

Upon a consideration of the policy as a whole, the court below did not err in sustaining the insured's right, and so that of the judgment creditor, to recover after the final judgment.

Judgment affirmed.