Shelley, Appellant, *v.* Nationwide Mutual Insurance Company.

Argued June 12, 1968. Before Wright, P. J., Watkins, Montgomery, Jacobs, Hoffman, Spaulding, and Hannum, JJ.

*Bernard J. Myers, Jr.,* with him *Zimmerman, Zimmerman, Myers & Gibbel,* for appellant.

*Donald E. LeFever,* with him *Stein, Storb and Mann,* for appellee.

OPINION BY HANNUM, J., September 12, 1968:

On May 9, 1966, Marian C. Shelley, the appellant, was the wife of Russell G. Shelley, who at the time was the owner of a thirty-seven foot cabin cruiser which he operated primarily in the Chesapeake Bay area. Russell G. Shelley was the holder of a license issued by the United States Coast Guard, certifying that he could safely be entrusted with the duties and responsibilities of charter of motor boats or other vessels of 15 gross tons or less, propelled by machinery other than steam while carrying six or less passengers for hire upon the Atlantic Ocean no more than 40 miles off shore between Ocean City, Maryland, and Ocean City, New Jersey. On the day in question, about 5:30 p.m., Marian C. Shelley fell from the bridge ladder of the cabin cruiser to the deck of the conveyance and fractured her left leg above the knee.

At the time of the incident which resulted in the plaintiff's injuries, she and her husband were being accompanied by several friends on a pleasure outing under an arrangement whereby any expenses incurred

throughout the day were to be divided equally among the occupants of the craft. Expenses for food, beverage, ice, gas and any others that may have arisen were paid for by one of the occupants who served as "banker" for the day, and at the conclusion of the outing the daily expenditures were divided among the Shelleys and their guests. According to Mrs. Shelley's deposition, the boat had always been used as a pleasure craft for the Shelleys and their guests, and to her knowledge a fixed fare had never been charged for anyone's passage other than in accordance with the expense-sharing plan. However, Mr. Shelley's deposition indicates that on a few occasions the boat had been used for charter fishing purposes for which a fixed rate was charged, but the boat was generally used for pleasure purposes and was being so used on the day the appellant was injured.

At the time of the accident, the appellant, Marian C. Shelley, was the owner of a blanket accident insurance certificate issued by the appellee. This insurance policy provided, inter alia, as follows: " 'Injury' as used in the Master Policy means bodily injury caused by accident occurring anywhere in the world during the term of insurance and sustained by the Insured Member:

"Section A—while riding as a passenger, but not as an operator or member of the crew, in or on (including boarding or alighting from) any land or water conveyance operated under a license for the transportation of passengers for hire; or

"Section B . . . .

"Section C . . . .

"(a) . . . .

"(b) . . . .

"(c) while operating or riding in (not for wage or profit) any watercraft not specified in Section A above."

As a result of the accident, the plaintiff was hospitalized in the Lancaster Osteopathic Hospital beginning May 9, 1966 and discharged June 17, 1966. During her stay she used the operating room, an anesthetic was administered and she was transported from Maryland to Lancaster by ambulance.

In this action of assumpsit, plaintiff filed her complaint seeking to recover $1,005.00. The appellee filed an answer containing new matter. Subsequently, appellant filed an answer to new matter and a motion for judgment on the pleadings. Depositions of the appellant and her husband were taken, and after oral argument the lower court entered judgment on the pleadings of the appellee. This appeal followed.

The sole question for decision is whether the plaintiff is entitled to recover under the provisions of her policy for injuries suffered while she was a passenger on a water conveyance which was licensed for the transportation of passengers for hire but was not being used for the transportation of passengers for hire at the time of the accident.

The research of counsel for both sides, of the court below and of this Court has failed to locate any Pennsylvania case construing this or any similar clause. The closest case appears to be *North American Accident Insurance Co. v. Wyatt* (Tex. Civ. App.) 160 S.W. 2d 298 (1942). In that case the situation was just the opposite of the one here involved. In that policy, transporting passengers for hire was made a specific exception to liability thereunder. It was held that the sharing of expenses by the passengers did not amount to transporting passengers for hire.

We can agree with that result but it does not answer the question before us. We are obliged to analyze the provisions of the policy and determine what the parties meant by the language used therein.

Certain rules of construction have become hornbook law. It was said in *Blue Anchor Overall Co. v. Pa. Lumbermens Mutual Insurance Co.*, 385 Pa. 394, 123 A. 2d 413 (1956) : "It is well established that an insurance policy will be construed most strongly against the insurer who has prepared it: MacDonald v. Metropolitan Life Insurance Co., 304 Pa. 213, 155 A. 491; West v. MacMillan (and Automobile Underwriters Insurance Co., Garnishees), 301 Pa. 344, 152 A. 104. If there is any doubt or ambiguity as to the meaning of the policy, the doubts and ambiguities will be resolved in favor of the insured: Beley v. Pennsylvania Mutual Life Insurance Co., 373 Pa. 231, 95 A. 2d 202; Howley v. Scranton Life Insurance Co., 357 Pa. 243, 53 A. 2d 613. It is also well settled that if an insurance policy is reasonably susceptible of two interpretations it is to be construed in favor of the insured in order not to defeat, without plain necessity, the claim to indemnity which it was the insured's object to obtain: Armon v. Aetna Casualty and Surety Company, 369 Pa. 465, 87 A. 2d 302, and the many cases cited therein. Words of common usage in a policy of insurance will be construed in their natural, plain and ordinary sense, but if technical words are used, they will be construed in their technical sense unless a contrary intention clearly appears: Goldin, The Law of Insurance in Pennsylvania, Vol. I, Sec. 237 (2nd ed. 1946) ; Yost v. Anchor Fire Insurance Company, 38 Pa. Superior Ct. 594."

See also *Miller v. Boston Insurance Co.*, 420 Pa. 566, 218 A. 2d 275 (1966).

With these principles of construction in mind we turn to an analysis of the clauses in question. We have no difficulty in holding that under the language used in the policy the plaintiff was not required to be a paying passenger. The language used is "while riding

as a passenger," not "while riding as a passenger for hire."

A more difficult problem is presented by the words "water conveyance operated under a license for the transportation of passengers for hire," as set forth in Section "A." The plaintiff was also covered under Section "C" of the policy while riding (not for wage or profit) in any other water craft not specified in Section "A." However, the specific items for which she makes claim are only recoverable if she is covered under Section "A."

The facts developed by the pleadings and the depositions taken establish that the water craft involved was licensed for the transportation of passengers for hire but that, on the particular cruise involved, it was not actually transporting passengers for hire.

Under the principle that a policy must be most strictly construed against the insurer who prepared it, we hold that the language used was broad enough to cover the situation which occurred. Had the company desired to limit its operation, it could have provided for coverage only on a "water conveyance operated under a license for the transportation of passengers for hire at a time when it was transporting such passengers for hire."

The same result is reached if we consider that the language involved is reasonably susceptible to two interpretations. Clearly the language used was not specific enough to rule out the plaintiff's construction as a matter of law.

The judgment of the court below is reversed and the case remanded for further proceedings in accordance with the foregoing opinion.

---

CONCURRING OPINION BY SPAULDING, J.:

The sole question upon which this dispute turns is whether an injury to a passenger on a boat licensed

for the transportation of passengers for hire, but not in actual use for this purpose at the time of the injury, is an injury within the definition of Section A of the insurance policy in question. I agree that it is.

The question arises because of the ambiguity of the language "water conveyance operated under a license for the transportation of passengers for hire" in Section A. The policy, which insures travel by land, sea, and air, contains no requirement that the licensed conveyance be in actual use for transportation of passengers for hire in order for the insured to qualify for the extensive benefits under Sections A and B of the policy.* Thus, "licensed" vehicles in Section A are contrasted with vehicles of the "private passenger type" in Section C; and, "licensed" watercraft in Section A are contrasted with "watercraft not specified in Section A" in Section C.

Appellant's husband, who holds a Coast Guard charter authorizing him to transport passengers for hire, is the owner and operator of the boat. Quite literally, at the time of the injury the boat was operated under a license for the transportation of passengers for hire. Such a license may be obtained only by an individual who had demonstrated his expertise in navigation and water safety by passing a series of examinations required by the Coast Guard in order to obtain a commercial license. The coverage afforded for injuries occurring on such a licensed watercraft is substantially greater than that for injuries occurring on other watercraft. The insurer, in affording this broader coverage, differentiated between the risks involved in the operation of licensed watercraft and the

---

* Coverage for travel by air is provided in Section B, which carries the same benefits and hospital indemnity as Section A. Benefits under Section C are 5% of those provided in Sections A and B and no hospital indemnity is offered.

greater risk in the operation of other watercraft. This difference in risk is a result of the superior skill and expertise of the licensed operator, as established by the Coast Guard examinations, rather than the use to which the watercraft is put. Since the difference in coverage is based to a great extent upon the skill of the licensed operator, coverage under Section A of the policy should not be denied solely because the boat was not in actual use for transportation of passengers for hire at the time of the injury.