# Janicik v. Prudential Insurance Co. of America

*Michael P. Malakoff*, for plaintiff.
*John H. Scott, Jr*, for defendant.

FLAHERTY, *J.*, December 27, 1978—This case involves a class action, and before the court are preliminary objections filed on behalf of defendant to the merits of plaintiff's complaint in the nature of a demurrer.

Defendant issued two policies of insurance to Daniel C. Janicik, each being an endowment life insurance contract in the face amount of $2,400. The policies contained riders which provided for a "family income benefit" of $50 per month. Mr. Janicik died in 1969 at the age of 51 years.

The policy, under the heading schedule of supplementary benefits, appears: "FAMILY INCOME BENEFIT. MONTHLY INSTALMENTS ARE $50.00 EACH. TERM PERIOD IS 65 YEARS LESS YEARS OF ISSUE AGE. PREMIUMS ARE $69.15 EACH CEASING AT POLICY AGE 65."

The policy further provides: "Upon receipt at the Home Office of due proof of Insured's death within

the Term Period for this Benefit specified in the Schedule of Supplementary Benefits. . . the Company will, subject to the provisions of the policy, pay Monthly Instalments each in the amount specified for this Benefit in the Schedule of Supplementary Benefits; such instalments will be paid to the Beneficiary. . . The Term Period is measured from the policy date. The first Monthly Instalment will be payable as of the date of the Insured's death, and subsequent instalments will be payable monthly thereafter, terminating with the last instalment due before the end of the Term Period."

This case has provided the court with a rather perplexing review. Plaintiff contends that the period for the monthly family income benefit is expressly set out in the policy as being "65 years less years of issue age," which, as plaintiff contends, is 19 years and 17 years on the 1964 and 1966 policies, respectively. Defendant, on the other hand, contends that plaintiff is entitled to the family income benefit to and including only when Mr. Janicik, had he survived, would have reached age 65, or for a number of years which could be expressed as 65 years less age at death.

It befalls the court to construe the language of the policy and establish the rights of the parties. In that construction, the court is constrained to follow certain well-established guidelines. The following clearly sets forth the law of Pennsylvania in this regard: "Certain rules of construction [of insurance contracts] have become hornbook law. It was said in Blue Anchor Overall Co. v. Pa. Lumbermen's Mutual Insurance Co., 385 Pa. 394, 123 A. 2d 413 (1956): 'It is well established that an insurance policy will be construed most strongly against the insurer who has prepared it.'" Shelley v. Nationwide

Mutual Insurance Company, 213 Pa. Superior Ct. 218, 222, 245 A. 2d 674, 675-6 (1968).

"Insurance contracts have been viewed under the law as contracts of 'adhesion', where the insurer prepares the policy for a purchaser having no bargaining power. Where a dispute arises, such contracts are construed strictly against the insurer. Eastcoast Equipment Company v. Maryland Casualty Company, [38 D. & C. 2d 499], 207 Pa. Superior Ct. 383, 218 A. 2d 91 (1966). In Eastcoast, we affirmed the decision of a court en banc on the basis of the lower court opinion which provided in part: 'The policy behind this rule [construction against the insurer] is sound; the insurer wrote the policy, and the individual purchaser is concerned primarily with monetary benefits. Concern with definitional clauses and exclusions is minimal; therefore, if they do become material, they should be strictly construed against the insurer.' 38 Pa. D. & C. 2d at 511 [218 A. 2d at 98]." Hionis v. Northern Mutual Insurance Company, 230 Pa. Superior Ct. 511, 516-17, 327 A. 2d 363, 365 (1974).

Defendant provides a very well-reasoned argument, and principally argues that the terms used in the policies in question have specialized meaning, and makes this argument quite well; however, the insurance treatises cited for the proposition advanced by defendant significantly point out the dangers involved regarding misunderstanding. Huebner and Black, Life Insurance, p. 100 (1976), states in the same paragraph quoted by defendant:

*"One of the chief handicaps in the sale of this policy is that often the insured does not understand its provisions regarding the income period.* The income is payable only if the insured dies during the income period, and then only until the end of

the income period, which may be ten, fifteen or twenty years from date of issue. The policy does *not* provide income benefits for ten, fifteen or twenty years from date of death. The longer the insured lives, the shorter will be the income period; . . . See Appendix to Defendant's Brief, 1-C." (Emphasis supplied.)

Similarly, Gregg & Lucas, Life and Health Insurance Handbook (1975), warns at p. 92 (appendix to defendant's brief, 3-C): "As in the case of the family maintenance policy, there is a danger of confusion in the minds of the insured and his beneficiaries, since the protection provided under the term portion is of limited duration. *Great care should be exercised by life underwriters to avoid misunderstandings about the length and the amount of protection provided for under family income policies.*" (Emphasis supplied.)

See also, Gregg & Lucas, Life and Health Insurance Handbook (1973) which provides (at p. 56, n.3):

"Frequently, decreasing term insurance. . . is called, although *quite incorrectly*, a 'family income policy'. The practice of naming a decreasing term policy on the basis of the purpose for which the policy was purchased is both a common and regrettable one. *The problem is that such names* as 'mortgage protection policy' or *'family income policy' do not adequately describe the nature of the contract.* The only proper generic name for a decreasing term insurance policy is 'decreasing term insurance'." (Emphasis supplied.)

It would appear, then, that the authors of the policy were actually or constructively aware that misunderstandings can arise in the issuance of

"family income policies," and that the use of this term alone inadequately expresses the intent to issue a "decreasing term" policy. This being the case, the author of the policy, defendant in this case, had a duty to clearly describe the meaning of "family income benefit" and to delineate any limitations. An inspection of the policy itself does not express that the "family income protection" provided by the policy was, in reality, decreasing term insurance.

The court must construe the language of the policy in light of how it would reasonably be understood by the ordinary person, not as it would be understood by life insurance specialists, or those having the benefit of the training provided to specialists. In Smith v. Cassida, 403 Pa. 404, 169 A. 2d 539 (1961), it was held that an insurance policy cannot be construed to mean otherwise than what it clearly says, and: "In construing the language of a contract, such as a policy of insurance, the standard is what a normally constituted person would have understood it to mean in its actual setting." Atlantic Lines, Ltd. v. American Motorists Insurance Co., 547 F. 2d 11, 13 (2d Cir. 1976).

In the event defendant intended that the monthly income installment was to be paid only if the insured died before age 65 and only to age 65, it would have been quite simple for the author to have so provided—but the author did not. The author of the policy did not provide in express language that the premium period was intended to be the same as the coverage period. Notwithstanding the language which appears in that which is attached to the policy, which does not help the construction, a purchaser should be permitted to rely on the clear

statement appearing conspicuously in the front portion of the policy.

"[T]he law. . . specifically states that where ambiguity clouds interpretation the contract in controversy must be interpreted against its authors. The person who writes with ink which spreads and simultaneously produces two conflicting versions of the same proposition cannot complain if the person affected by both propositions chooses to accept that which is more helpful to him and which is against the interests of the contract writer." Sykes v. Nationwide Mutual Insurance Company, 413 Pa. 640, 643, 198 A. 2d 844, 845 (1964).

Although defendant makes well-reasoned esoteric argument in support of its proposed construction, there is nothing in the policy itself which would clearly and expressly inform the policy holder that the "family income benefit" is as now argued by defendant author.

Constrained by the severe rules of construction which are applicable to the construction of a life insurance policy such as the one in question, the court must adopt the reasonable construction proposed by plaintiff, and, consequently, deny the preliminary objections in the nature of a demurrer.

## ORDER

And now, December 27, 1978, upon consideration of the preliminary objections in the nature of a demurrer filed by defendant, the record, arguments of counsel and briefs submitted, it is ordered, adjudged and decreed that the preliminary objections in the nature of a demurrer filed on behalf of defendant are herewith dismissed.