the computers at the I.R.S. automatically generated these notices on the above-mentioned dates.

Plaintiffs argue this evidence is insufficient to show that the notices and demands were actually sent to plaintiffs, but only show that the computers generated such notices and demands. Loran Bradford, a twenty-two year employee of the Internal Revenue Service Center in Austin, Texas, states in her affidavit that the indication on the computer transcripts shows that the I.R.S. computer automatically completed and mailed the notices of assessment and demands for payment on each specified date. She states that it is the practice of the I.R.S. for the computer to automatically generate and send such notices. Also, she states that it is not the practice of the I.R.S. to retain copies of the notices of assessment and demands for payment prepared by the computer. In addition to these notices of assessment and demands for payment, Revenue Officer Kennedy states that he gave plaintiffs notices of assessment and demanded payment in his personal meetings with them on November 10, 1986 and April 4, 1987.

██ It has been held that the computerized transcriptions are sufficient evidence to establish a prima facie case that notice of assessment and demand for payment was sent to the taxpayer. *See In re Saunders*, 26 AFTR.2d 70–5388, 70–5389 (N.D. Cal.1970). Plaintiffs have not presented adequate evidence to challenge this prima facie case that notices and demands were sent to them. Also, the government enjoys the presumption of procedural regularity in administering its task, in absence of clear evidence to the contrary. *United States v. Chemical Foundation, Inc.*, 272 U.S. 1, 14–15, 47 S.Ct. 1, 6, 71 L.Ed. 131 (1926); *United States v. Ahrens*, 530 F.2d 781, 785 (8th Cir.1976). The court finds that the government has presented sufficient evidence to indicate that proper section 6303 notices of tax assessment and demands for payment were sent to the plaintiffs in this case. In fact, plaintiff Esley Schmidt received five written notices, plus the oral notices of Officer Kennedy, and plaintiff Mildred Schmidt received two written notices, in addition to the oral notices and demands of Officer Kennedy. According to the computer records, the written notices and demands were sent to plaintiffs' last-known and present address, R.R. 3, Waverly, Kansas 66871.

Valid tax assessments were made pursuant to 26 U.S.C. § 6203 (see this Court's Memorandum and Order of September 29, 1988, at page 9). The United States has presented sufficient evidence showing that the notices of assessment and demands for payment, pursuant to 26 U.S.C. § 6303, were properly sent to plaintiffs. Therefore, the lien placed on plaintiffs' property by the United States was valid and proper. Thus, the court will grant the government's motion for summary judgment.

IT IS BY THE COURT THEREFORE ORDERED that plaintiffs' motion to alter or amend the September 29, 1988 Order of this court is denied. IT IS FURTHER ORDERED that defendant United States' motion for summary judgment is granted. IT IS FURTHER ORDERED that the remaining pending motions in this case are rendered moot.

NATIONAL INDEMNITY COMPANY, a Nebraska corporation, Plaintiff,

v.

UNITED STATES POLLUTION CONTROL, INC., an Oklahoma corporation, Defendant.

The TRAVELERS INDEMNITY COMPANY, Intervenor,

v.

The EMPIRE INDEMNITY INSURANCE COMPANY, an Oklahoma corporation, Third–Party Defendant.

No. CIV–88–656–W.

United States District Court, W.D. Oklahoma.

May 1, 1989.

Ray H. Wilburn, Richard W. Wassall, Wilburn Masterson & Holden, Tulsa, Okl., Thomas R. Newman, Martin P. Lavelle, Bower & Gardner, New York City, for plaintiff.

George W. Dahnke, Hastie & Kirschner, Oklahoma City, Okl., and Robert L. Tofel, Fine, Tofel, Saxl & Berelson, New York City, J. Eric Elliff, Stanley Doten, Morrison & Foerster, Denver, Colo., Leigh Ogle, Joseph Glass, Tulsa, Okl., John Cheek, Tim Cheek, Cheek, Cheek & Cheek, Oklahoma City, Okl., Stephen F. English, Thomas A. Gordon, Roger Westendorf, Dianne K. Ericson, Bullivant, Houser, Bailey Pendergrass & Hoffman, Portland, Or., for defendant.

## ORDER

LEE R. WEST, District Judge.

Before the Court are the Motions of the Plaintiff and the Intervenor for Summary Judgment in the above-captioned case. In this declaratory action, the insurers claim they are not liable under their insurance policies for the response and clean-up actions taken by the United States Environmental Protection Action (EPA) pursuant to the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. § 9606. The insurers contracted to pay "all sums which the insured shall become legally obligated to pay as damages ..." The insurers claim that response and clean-up actions taken by the EPA are actions in equity and therefore preclude the recovery of "damages." The Intervenor also maintains that clean-up costs are not expenses incurred as a result of "property damage."

The first issue before the Court is whether the term "damages" as used in the insurance policy should be construed in a plain and ordinary sense or whether the term connotes the more technical, legal distinction between an action in law or an action in equity.

The law in Oklahoma requires that the language in an insurance policy be accepted in its plain, ordinary and popular sense. *Penley v. Gulf Ins. Co.*, 414 P.2d 305 (Okla. 1966). Unless it affirmatively appears otherwise, terms in an insurance policy should be construed according to their plain, ordinary and accepted use in common speech. *Houston v. National General Ins. Co.*, 817 F.2d 83 (10th Cir.1987).

In the instant action, the Plaintiff's insurance policy gives the following definition:

"Damages *includes* ... damages for loss of use of property resulting from property damage." (Court supplied emphasis)

The policy defined damages in an inclusive manner only, leaving the term open to interpretation. Clearly, the policy did not affirmatively limit the definition of damages to the legal definition only. Likewise, the Intervenor's insurance policy did not

affirmatively limit the definition of damages to the legal definition only. Said policy gave no definition for damages as applied to seeking damages for property damage. Thus, the ordinary and plain meaning of damages must be applied.

The dictionary defines damages as: "the estimated reparation in money for detriment or injury sustained: compensation or satisfaction imposed by law for a wrong or injury caused by violation of a legal right." Webster's Third New International Dictionary (1976). The dictionary makes no distinction between actions at law and actions in equity. Therefore, the meaning of damages should include monies sought under CERCLA for response and clean-up of contamination of the environment by toxic wastes.

The Court is not persuaded by contrary rulings. *See Continental Insurance Companies v. Northeastern Pharmaceutical & Chemical Co., Inc.*, 842 F.2d 977 (8th Cir. 1988); *Maryland Casualty Co. v. Armco, Inc.*, 822 F.2d 1348 (4th Cir.1987). The Court finds the better approach is to construe the meaning of damages in its ordinary and popular sense. *See United States Fidelity and Guaranty Co. v. Thomas Solvent Co.*, 683 F.Supp. 1139 (W.D.Mich.1988); *New Castle County v. Hartford Acc. & Indem. Co.*, 673 F.Supp. 1359 (D.Del.1987).

■ The second issue before this Court is whether the response and clean-up sought by the EPA for contamination constitutes expenses incurred as the result of "property damage" within the meaning of the policy. The Court answers in the affirmative.

Property damage is defined in the Intervenor's policy as: "physical injury or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom." Once property damage is found as a result of environmental contamination, this Court finds that clean-up costs should be recoverable as sums that the insured was liable to pay as a result of property damage. *See United States Fidelity &*

*Guaranty Co. v. Thomas Solvent Co., supra.*

Accordingly, Plaintiff's and Intervenor's Motions for Summary Judgment are hereby DENIED.