**FEDERAL INSURANCE COMPANY, Plaintiff,**

v.

**SUSQUEHANNA BROADCASTING COMPANY, Defendant.**

**Civ. A. No. 88–0469.**

United States District Court, M.D. Pennsylvania.

Dec. 21, 1989.

Edward C. Toole, Jr., Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., for plaintiff.

Thomas B. Schmidt, III, Harrisburg, Pa., W. Edwin Jackson, Susquehanna Broadcasting Co., York, Pa., Thomas B. Schmidt, III, Pepper, Hamilton & Scheetz, Harrisburg, Pa., Gerald P. Norton, Susan L. Launer, Pepper, Hamilton & Scheetz, Washington, D.C., for defendant.

## MEMORANDUM

CALDWELL, District Judge.

### I. *Introduction.*

The parties have cross-moved for summary judgment pursuant to Fed.R.Civ.P. 56. This declaratory judgment action was brought by plaintiff, Federal Insurance Company (Federal), to establish that it has no duty to indemnify defendant, Susquehanna Broadcasting Co. (SBC), for the costs of cleaning up environmental pollution under comprehensive general liability insurance policies in effect between the parties. Plaintiff also asserted a claim for restitution of defense costs for allegedly non-covered claims. The main issues presented are those commonly occurring in litigation of this type: (1) whether response costs under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. § 9601 et seq., constitute "damages" within the meaning of the policies; and (2) whether a policy exclusion providing coverage only for "sudden and accidental" releases of pollutants bars indemnification. An additional issue is plaintiff's contention that under Pennsylvania law the settlement of litigation between SBC and plaintiffs in the underlying action extinguished the right of another defendant to seek contribution from SBC for response costs that defendant was required to expend under governmental order. The principal issues have been extensively litigated in the past, sometimes with sharp conflicts between courts. We will examine the motions under the well established standard. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This is a diversity action controlled by Pennsylvania law.

### II. *Background.*

Frederick Shealer operated a waste hauling and disposal business in the Gettysburg, Pennsylvania area. He would pick up and dispose of wastes for various waste generators, including Westinghouse Electric Corporation and SBC. Eventually, over a period of years, certain of these wastes contaminated soil and well water in adjoining residential areas. Those neighbors affected brought suit. See *Fishel v. Westinghouse Electric Corp.,* 617 F.Supp. 1531 (M.D.Pa.1985) and 640 F.Supp. 442

(M.D.Pa.1986) for some background.[1] Westinghouse was also ordered by the Environmental Protection Agency (EPA) to clean up the contaminated areas pursuant to 42 U.S.C. § 9607(a). Westinghouse arranged a settlement with the plaintiffs and also joined SBC, and other third party waste generators, as third party defendants. Westinghouse sought contribution and indemnity for its liability to the plaintiffs and for response costs it incurred in complying with the EPA order. Upon their motion, the plaintiffs eventually were also permitted to bring direct claims against the third party defendants.

SBC tendered defense of the claims to Federal in January of 1986. The insurance company at first declined to provide a defense, contending in letters to SBC's Chief Counsel, dated May 30, 1986 and June 3, 1986, that there was no coverage under primary and excess policies in force between the parties. Eventually, by letter dated February 19, 1987, Federal did agree to provide a defense but did so under a reservation of rights. Despite plaintiff's contrary contention, Federal did not assert at that time, or at any time previously, that it was denying coverage because CERCLA response costs were not damages within the meaning of the policy language. The first time Federal raised that issue was in a letter, dated September 22, 1987, from an environmental claims supervisor to defendant's Chief Counsel.

In early 1988, plaintiff settled the neighbors' claims against defendant. On March 25, 1988, plaintiff notified defendant that Federal no longer considered itself obligated to act further on SBC's part since the remaining claims were those of Westinghouse against SBC, which sought contribution for costs plaintiff considered beyond the coverage it provided. Plaintiff paid the complete costs of defending the action up to the time of its withdrawal. Since that time, Westinghouse and the third party waste generator defendants agreed in the *Fishel* action to dismiss the claims against each other. See *Fishel, supra,* order, dated October 4, 1989.

III. *Discussion.*

■ Plaintiff's course of conduct in discharging its obligations to accept or deny coverage and, in turn, defend the action, forms the basis of a preliminary argument by defendant that Federal has waived its argument on the damages coverage issue or, alternatively, should be estopped from arguing it. SBC argues that plaintiff's failure to set forth its " 'damages' defense" in its reservation of rights letter precludes its presentation in the instant action. (doc. no. 26, defendant's opposition and supporting brief at p. 15). Defendant claims that this position is particularly appropriate "where, as here, the insured is prejudiced because the insurer later seeks recoupment of defense costs or the insured has foregone the opportunity to obtain an early ruling as to that coverage issue." (*Id.* p. 16). Further prejudice is claimed in defendant's reply brief, (doc. no. 36 at p. 5), in that SBC "had accepted Federal's defense and effectively ceded control of the litigation to Federal and its designated counsel."

We can make short work of the waiver argument. Defendant is simply wrong as a matter of Pennsylvania law in asserting that when an insurer "does not raise an objection to coverage, and defends with a reservation of rights, the failure to raise the issue results in waiver ... as to that objection." (doc. no. 26 at p. 15–16). This position has been rejected by Pennsylvania courts and federal district courts interpreting Pennsylvania law. Rather, Pennsylvania uses an estoppel approach. *See Pfeiffer v. Grocers Mutual Insurance Co.,* 251 Pa.Super 1, 379 A.2d 118 (1977). As stated in *Weintraub v. St. Paul Fire And Marine Insurance Co.,* 609 F.Supp. 273, 275 (E.D. Pa.1985) (cited cases omitted), under Pennsylvania law, "an insurer's failure to assert all possible defenses when denying coverage will create an estoppel only when such failure causes the insured to act to his

---

**1.** A similar case was filed at *Arentz v. Westinghouse Electric Corp.,* No. 86–1674 (M.D.Pa.) but was consolidated with the *Fishel* action.

detriment in reliance thereon." *See also Bensalem Township v. Western World Insurance Co.,* 609 F.Supp. 1343 (E.D.Pa. 1985).

We have no particular quarrel with the cases cited by defendant in support of its waiver argument. See *Intel Corporation v. Hartford Accident And Indemnity Co.,* 692 F.Supp. 1171 (N.D.Cal.1988) and *Central Armature Works v. American Motorists Insurance Co.,* 520 F.Supp. 283 (D.D.C.1980). They are simply inapposite here because they do not involve Pennsylvania law.[2] Other cases cited by defendant are distinguishable. *Beckwith Machinery Co. v. Travelers Indemnity Co.,* 638 F.Supp. 1179 (W.D.Pa.1986); *Safeco Insurance Co. v. Ellinghouse,* 223 Mont. 239, 725 P.2d 217 (1986) and *Ebert v. Balter,* 83 N.J.Super. 545, 200 A.2d 532 (1964), all involved cases where the insurer accepted coverage, defended the underlying action for some period of time without a reservation of rights, and then abruptly withdrew from the case. Imposition of liability on the company in those circumstances was in accord with the general Pennsylvania rule "that an insurance company may not undertake the defense of a suit which entails the defendant's relinquishing to the company the management of the case and then turn around and deny liability under its policy." *Brugnoli v. United Nat'l Insurance Co.,* 284 Pa.Super. 511, 516, 426 A.2d 164, 166–67 (1981) (quoted case omitted). Here, as noted, there is a reservation of rights letter which compels a different conclusion. *See Draft Systems, Inc. v. Alspach,* 756 F.2d 293 (3d Cir.1985).

■ We must therefore determine if plaintiff should be estopped from arguing that its policies are inapplicable to defendant's claims because defendant is not seeking "damages" within the meaning of the policies. To apply estoppel here SBC must show that it has been prejudiced by plaintiff's failure to assert this ground in its reservation of rights letter and earlier denials of coverage. *See Pfeiffer, supra.* As noted, defendant claims prejudice because: (1) Federal has sought recoupment of defense costs; (2) defendant has foregone an opportunity to obtain an early ruling on this coverage issue; and (3) SBC accepted Federal's defense of the underlying action and ceded control of that litigation to Federal and its designated defense counsel.

In light of the reservation of rights letter, none of these contentions, without more, establishes the necessary prejudice. Defendant knew that plaintiff was disclaiming coverage on other grounds so a claim for recoupment of counsel fees should not have been surprising.[3] Defendant has also foregone an early ruling on all coverage issues so its inaction in regard to this particular issue could not have been prejudicial. Finally, the ceding control of the litigation to Federal and its counsel is not sufficient. Defendant had knowledge of the initial refusal to defend and the plaintiff's issuance of the reservation of rights letter. Defendant nevertheless accepted plaintiff's choice of counsel. We will therefore address plaintiff's argument on the merits.

■ There were various policies in effect during the relevant time period.[4] A representative policy contained the following language:

note our agreement with defendant that plaintiff is not entitled to reimbursement of any of its defense costs incurred until the time of the termination of the *Fishel* action. *See Terra Nova Insurance Co. v. 900 Bar, Inc.,* 887 F.2d 1213 (3d Cir.1989). We will therefore enter judgment in favor of defendant on count III of the complaint.

**2.** Defendant's failure to refer to the relevant Pennsylvania case law in its briefs is curious. In particular, we have in mind the *Weintraub* decision since *Weintraub* was footnoted in *Intel* as a case invoking the estoppel approach. *See Intel,* 692 F.Supp. at 1171, 1181 n. 11.

**3.** We note that the claim for counsel fees is for fees expended in defense of non-covered claims so the merits of this claim are not connected to the early failure to assert the damages defense. The two issues are simply not relevant to each other. What is important is that plaintiff did defend under a reservation of rights. We do

**4.** SBC contributed to the waste from 1975 through 1983. Specifically, during that time period, Shealer hauled waste for the Pfaltzgraff Company, a subsidiary of SBC.

The company will pay on behalf of the insured all sums which the insured shall become obligated to pay as damages by reason of liability to which the insurance applies ... for bodily injury, property damage or personal injury caused by an occurrence....

Plaintiff contends that response costs under CERCLA are equitable in nature. In contrast, it is well established that damages are a legal remedy. Accordingly, it argues that its promise to pay on behalf of SBC any "damages" for which the latter may be liable is inapplicable here. Federal relies mainly upon *Continental Insurance Companies v. Northeastern Pharmaceutical & Chemical Co.*, 842 F.2d 977 (8th Cir.1988) (en banc) (*NEPACCO*) and *Maryland Casualty Co. v. Armco, Inc.*, 822 F.2d 1348 (4th Cir.1987). It has also referred us to *AIU Insurance Co. v. Superior Court (FMC Corp.)*, 213 Cal.App.3d 1219, 262 Cal.Rptr. 182 (1989), *review granted*, (Cal. Nov. 30, 1989). *NEPACCO* held that under Missouri law an insurer's obligation to pay "damages" on behalf of its insured does not include CERCLA response costs. *Maryland Casualty* reached the same conclusion under Maryland law. SBC counters with cases in support of its position that response costs, or more generally costs necessary to repair property damage, are damages within the meaning of the policy language.[5] *See, e.g., Aerojet General Corp. v. San Mateo County Superior Court (Cheshire and Companies)*, 211 Cal.App.3d 216, 257 Cal.Rptr. 621 (1989); *New Castle County v. Hartford Accident and Indemnity Co.*, 673 F.Supp. 1359 (D.Del.1987); *Avondale Industries, Inc. v. Travelers Indemnity Co.*, 697 F.Supp. 1314 (S.D.N.Y.1988), *aff'd*, 887 F.2d 1200 (2d Cir.1989); *National Indemnity Co. v. United States Pollution Control, Inc.*, 717 F.Supp. 765 (W.D.Okla.1989).

Each of these lines of cases has its own theme. Those holding that response costs, or costs of restoring property, are recoverable as damages refuse to assign a technical meaning to the word "damages," referring the lay person's point of view and

emphasizing the reasonable expectations of the insured. Those holding that such costs are not recoverable start from the premise that damages has a technical, but nonetheless, accepted meaning which does not include the costs of complying with equitable actions. The latter also note the potentially unlimited exposure which might result if an insurance company was required to pay for response costs.

Our own analysis of the issue is not very different from the en banc discussion in *NEPACCO* except for the result. We believe that under Pennsylvania law Federal can be required to pay for at least some of the response costs.

In interpreting insurance contracts, Pennsylvania, while construing words of common usage "in their natural plain, and ordinary sense" will construe technical words "in their technical sense unless a contrary intention clearly appears." *Blue Anchor Overall Co. v. Pennsylvania Lumbermens Mutual Insurance Co.*, 385 Pa. 394, 397–98, 123 A.2d 413, 415 (1956) (construing in a technical sense the phrases "other insurance" and "concurrent or not"). *See also Easton v. Washington County Insurance Co.*, 391 Pa. 28, 137 A.2d 332 (1957) ("sheds" in a fire insurance policy is not a word of art but a simple word of common usage); *Mohan v. Union Fidelity Life Insurance Co.*, 207 Pa.Super. 205, 216 A.2d 342, 348 n. 11 (1966) (per curiam affirmance incorporating the opinion of the trial court) (paycheck is a word of common meaning); *Shelley v. Nationwide Mutual Insurance Co.*, 213 Pa.Super. 218, 245 A.2d 674 (1968).

This rule is in accord with Pennsylvania rules of contract construction in general. In interpreting a contract:

It is fundamental that "Technical terms and words of art are [to be] given their technical meaning unless the context or a usage which is applicable indicates a different meaning". Restatement, Contracts, § 235(b). And this rule is especially applicable where the words of art

---

**5.** We reject defendant's contention that the Westinghouse contribution claim transforms the claim for response costs into a purely legal one. *See Armco, supra,* 822 F.2d at 1352.

used are legal terms. 17 C.J.S., Contracts, § 302, page 720. [remaining citation omitted].

*Fischer & Porter Co. v. Porter*, 364 Pa. 495, 500, 72 A.2d 98, 101 (1950) (brackets added in part). *See also generally Spatz v. Nascone*, 283 Pa.Super. 517, 424 A.2d 929 (1981); *Rothstein v. Aetna Insurance Co.*, 216 Pa.Super. 418, 268 A.2d 233 (1970). In accord with *Fischer*, the Third Circuit in *Miller v. Weller*, 288 F.2d 438 (3d Cir.1961), concluded that damages was "a word of art with a rather definite meaning," id. at 439, and used the definition of damages as given in the case law, id. at n. 4, to interpret a contract.[6]

Based upon the foregoing we must interpret damages in the instant case in its technical sense as it is "generally recognized in the law," *Miller*, 288 F.2d at 440, and therefore permit indemnification only to the extent that the response costs are recoverable under Pennsylvania law as an item of damages.

■ In making this determination, it is not very helpful to note that damages are a legal remedy and the sums sought from SBC represent Westinghouse's expenses to comply with equitable orders of the EPA. To recognize that damages are not equitable relief does not answer the specific question whether the costs of restoring land to its original condition are, nevertheless, recoverable in damages. It is well established in Pennsylvania that such costs are recoverable. The Pennsylvania Superior Court recently stated the general rule as follows:

The measure of damages for injury to property is the cost of repairs where that injury is reparable unless such cost is equal to or exceeds the value of the injured property. *Rabe v. Shoenberger*, 213 Pa. 252, 62 A. 854 (1906); *Wade v.*

*S.J. Groves & Sons Co.*, 283 Pa.Super. 464, 424 A.2d 902 (1981). Where the cost of repair does exceed the value of said property, the cost of damages becomes the value of the property. *Id.* Where, however, the injury is deemed to be permanent, the measure of damages becomes the decrease in the fair market value of the property. *Id.*; *Bumbarger v. Walker*, 193 Pa.Super. 301, 164 A.2d 144 (1960).

*Kirkbride v. Lisbon Contractors, Inc.*, 385 Pa.Super. 292, 298, 560 A.2d 809, 812 (1989) (en banc). In *Kirkbride*, the superior court affirmed a damage award in the form of restoration costs despite the defendant's contention that such costs were improper since they significantly exceeded the diminution in the value of the land. Because the injury was reparable, however, plaintiffs "were entitled to receive the costs of restoring their land back to its original condition." *Id.* at 300, 560 A.2d at 813.

Since, under Pennsylvania law "where an injury is reparable, the damage is the cost of repair or restoration," *Id.* at 300, 560 A.2d at 813, it appears that CERCLA response costs would be covered under the policies since those costs would include the cost of restoring the land and cleaning up the pollution. *See generally, Lutz v. Chromatex, Inc.*, 718 F.Supp. 413 (M.D.Pa. 1989). There is a limitation, however, upon the damages that may be recovered. They cannot exceed the value of the property.[7] *See also NEPACCO, supra*, 842 F.2d at 989 (Heaney, J., concurring and dissenting) (the record clearly showed that the cost of cleaning up was less than the value of the government's interest in the property and therefore was the proper measure of damages).[8]

---

**6.** We recognize that the Third Circuit considered another important element of this case was the drafting of the agreement by two lawyers who should have recognized the significance of using the word damages but we believe the *Fischer* case was an equally valid consideration.

**7.** We think that we can conclude that the damage was reparable since remedial efforts have

been undertaken. If the damage had been permanent, the damages that Federal would have been responsible for would have been the diminution in the value of the land.

**8.** Hence, the fears of some courts that deciding for coverage would impose unlimited liability upon insurance companies need not be addressed here. *Compare AIU, supra*.

■ Federal also contends that there is no coverage because of the pollution exclusion in certain of the policies. Defendant counters that plaintiff is ignoring the period of time when the policies did not contain a pollution exclusion and that, pursuant to *ACandS, Inc. v. Aetna Casualty And Surety Co.*, 764 F.2d 968 (3d Cir.1985); *General Refractories Co. v. Travelers Insurance Co.*, 1988 WL 136317 (E.D.Pa. 1988); *Reading Co. v. Travelers Indemnity Co.*, 1988 WL 13242 (E.D.Pa.1988) and *Centennial Insurance Co. v. Lumbermens Mutual Casualty Co.*, 677 F.Supp. 342 (E.D.Pa.1987), Pennsylvania would permit full recovery of defendant's CERCLA obligations under the earlier policies even if some of the disposal and discharges contributing to the need for response costs occurred when the pollution exclusion was applicable.[9] Specifically, SBC contends that the "exposure theory," as it has come to be known, of determining when "property damage" has occurred or of determining when an "occurrence" within the meaning of the policies' definitions happened, dictates that coverage for the pollution in the underlying action can start from the time in 1975·that Shealer began disposing of wastes at the various dump sites for SBC.

In *ACandS*, the Third Circuit held that, along with the theories of "exposure-in-residence" and "manifestation," an insurance policy providing coverage for bodily injury would be applicable to claims for bodily injuries arising from exposure to asbestos under the exposure theory; that is, a policy in effect at the time the injured party was exposed to asbestos would provide coverage for an illness manifesting itself after the expiration of the policy period. *Accord Centennial, supra* (coverage for environmental discharge triggered at times wastes were dumped onto the land). We agree with defendant. Therefore, coverage under the earlier policies not containing a pollution exclusion was triggered in this case.

*ACandS* is also significant here because of a potential proration issue. In *ACandS*,

the defendant insurers argued that any particular policy could only be responsible for a pro rata share of an injury, measured, in part, by its effective period. Rejecting this contention, the Third Circuit stated:

> The policies require the insurers to pay all sums which ACandS becomes "legally obligated to pay" because of bodily injury during the policy period. It is uncontested that under principles of tort law ACandS may be held fully liable for a personal injury plaintiff's damages caused in part by ACandS' asbestos during a particular period, even though plaintiff's damages may also have been caused, in part, at other times. *See e.g., Borel v. Fibreboard Paper Products Corp.*, 493 F.2d 1076, 1094–96 (5th Cir. 1973), *cert. denied*, 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974). It follows· that if a plaintiff's damages are caused in part during an insured period, it is irrelevant to ACandS' legal obligations and, therefore, to the insurer's liability that they were also caused, in part, during another period. *See Keene [Corp. v. Insurance Co. of North America]*, 667 F.2d [1034] at 1047–49 [D.C.Cir.1981]. We think the Supreme Court of Pennsylvania would agree.

764 F.2d at 974. The policies at issue in the instant case contain similar language. And generators of environmental waste can be held jointly liable for all response costs even though others may have contributed to the pollution. *See United States v. Marisol, Inc.*, 725 F.Supp. 833 (M.D.Pa. 1989) (Nealon, J.). On the current record, we conclude then that the earlier policies would provide coverage for all of SBC's response costs liabilities regardless of the presence of the pollution exclusion in later policies.

■ Nevertheless, because it might advance the ultimate resolution of this action, we present our observations on the effect of the pollution exclusion clause. A representative exclusion provided that the policy would not apply to:

---

**9.** There is a dispute whether the pollution exclusion was first set forth in a policy on March 2, 1977, as SBC contends, or on March 2, 1976, as

Federal contends. Our analysis of the pollution exclusion issue will not require us to resolve this dispute.

bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acid, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants, or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

This language provides that there is no coverage for damages resulting from pollution unless the pollution was sudden and accidental. The pollution here occurred gradually over a period of years.[10] Hence, Federal argues there is no coverage. Plaintiff cites *Lower Paxton Township v. United States Fidelity And Guaranty Co.*, 383 Pa.Super. 558, 557 A.2d 393 (1989) and *Techalloy Company, Inc. v. Reliance Insurance Co.*, 338 Pa.Super. 1, 487 A.2d 820 (1984). In both of these cases the Pennsylvania Superior Court held that coverage for pollution could only be obtained "if the discharge itself is both sudden, meaning abrupt and lasting only a short time, and accidental, meaning unexpected." *Lower Paxton*, 383 Pa.Super. at 571, 557 A.2d at 399. SBC contends that these cases were wrongly decided and that the better rule is set forth in cases like *United States Fidelity & Guaranty Co. v. Thomas Solvent Co.*, 683 F.Supp. 1139 (W.D. Mich.1988) and *New Castle County v. Hartford Accident & Indemnity Co.*, 673 F.Supp. 1359 (D.Del.1987). Those cases hold that "sudden and accidental" is ambiguous, must be construed in the insured's favor, and requires only an accidental discharge for coverage to take effect. SBC points out that we are not controlled by intermediate state court appellate decisions, *see Wisniewski v. Johns–Manville Corp.*, 759 F.2d 271 (3d Cir.1985), and must rule as we think the state's highest court would. *Id.* We have carefully considered cases on both sides of this issue and agree with the reasoning and holding of the courts in *Lower Paxton* and *Techalloy*.

■ SBC further argues that *Lower Paxton* and *Techalloy* do not control here because the insured was the active polluter in those cases. In the instant case, SBC had hired Shealer to dispose of environmental waste and the discharges occurred at locations chosen and controlled by Shealer. SBC argues the pollution exclusion is ambiguous concerning its application to pollution by third parties and accordingly should be construed to provide coverage for SBC's liability arising from Shealer's disposal of defendant's waste. Defendant relies principally upon *United States Fidelity And Guaranty Co. v. Specialty Coatings Co.*, 180 Ill.App.3d 378, 129 Ill.Dec. 306, 535 N.E.2d 1071 (1989). Faced there with a similar argument from the insured, the court stated as follows:

It is not clear from the circumstances of this case, and from the underwriting history of the exclusionary clause to which we will later refer, that the parties intended the exclusionary clause to apply whether the insured was an active polluter or not. Certainly, those engaged in manufacturing processes would be expected to have sought other or additional insurance had they known that the mere act of engaging an independent agency such as a waste disposal in the ordinary course of having industrial wastes removed from their property would result in the denial of insurance coverage. There is nothing in the record to show whether such additional insurance was even available when defendants purchased their USF & G policy. This ambiguity must be resolved against USF & G in consonance with the authorities previously cited.

*Id.* at 385, 129 Ill.Dec. at 311, 535 N.E.2d at 1076.

Whatever validity this approach to insurance policy interpretation has in Illinois, it cannot be used under Pennsylvania law. In Pennsylvania, the intent of the parties is ascertained first from the language of the policy if possible. *See Standard Venetian Blind Co. v. American Empire Insurance*

---

**10.** We reject defendant's contention that plaintiff has not proven that the pollution was gradual. That was established in the underlying action.

*Co.*, 503 Pa. 300, 469 A.2d 563 (1983). The pollution exclusion makes no reference at all to active polluters or passive polluters. These terms are foreign to the policies in question. As such, we agree with the court in *Fireman's Fund Insurance Cos. v. Ex–Cell–O Corp.*, 702 F.Supp. 1317, 1325 (E.D.Mich.1988), when faced with the same argument by the insureds there:

> Insofar as the term "active polluter" is a rubric for analyzing whether coverage exists under the terms of the policy, it is at best unnecessary. If, however, the term imports some additional criteria not found in the policy, it is not part of the parties' contract. Policyholders' argument is not persuasive.

In our view, the pollution exclusion broadly, but nevertheless plainly, excludes coverage for gradual pollution. Thus, under Pennsylvania law, there is no occasion or opportunity to indulge in a loose examination of the "circumstances" of the case or "the underwriting history of the exclusionary clause." Nor should we examine what would have been expected of SBC in obtaining other insurance which would have covered the risk. Federal's only obligation is to fulfill its obligations for the risks it contractually obligated itself.

Along with *Specialty Coatings*, SBC also, in part, relies upon *Niagara County v. Utica Mutual Insurance Co.*, 80 A.D.2d 415, 439 N.Y.S.2d 538 (1981); *Covington Township v. Pacific Employers Insurance Co.*, 639 F.Supp. 793 (M.D.Pa.1986); *Jackson Township Municipal Utilities Authority v. Hartford Accident and Indemnity Co.*, 186 N.J.Super. 156, 451 A.2d 990 (Law Div.1982) and *United Pacific Insurance Co. v. Van's Westlake Union, Inc.*, 34 Wash.App. 708, 664 P.2d 1262 (1983). Most of these cases were correctly critiqued by the court in *Ex–Cell–O, supra,* as follows:

> The distinction between "active" and "passive" polluters originates from *Niagara County*, in which the court held that the pollution exclusion in the county's policy did not preclude the insurer's duty to defend the county against an action regarding hazardous waste disposal at Love Canal, where the county merely

owned the land. Interpreting the legislative history behind the statutorily mandated pollution exclusion, the court suggested that it was meant to apply to "industry-related activities." [*Niagara County v. Utica Mut. Ins. Co.*, 103 Misc.2d 814] 427 N.Y.S.2d at [171] 174 [1980]. Subsequent cases have ignored the statutory basis of *Niagara County's* holding, and extended the concept beyond its more limited holding. *See, e.g., Jackson Township*, 451 A.2d at 991–92, and *Van's Westlake Union*, 664 P.2d at 1264–66. *See* Note, *The Pollution Exclusion Clause Through the Looking Glass*, 74 Geo.L.J. 1237, 1271–73 (1986) ("Whatever little analytical value the labels might have had in the *Niagara County* context, they have no value once the facts change.").

702 F.Supp. at 1325 n. 12.

Moreover, *Niagara County* has not received unanimous acceptance within its own state. In *Powers Chemco, Inc. v. Federal Insurance Co.*, 144 A.D.2d 445, 533 N.Y.S.2d 1010 (1988), the Appellate Division, Second Department, refused to follow it. In *Powers Chemco,* the plaintiff bought land which had been used by the seller to dispose of hazardous material over a number of years. Powers Chemco entered into a consent decree with New York State to clean up the site and sought indemnification from its defendant insurer. Federal relied upon the same pollution exclusion at issue in the instant case to avoid coverage. Plaintiff asserted, as SBC does here, that the exclusion applies only to active polluters. Rejecting this argument, the appellate court stated:

> The plaintiff emphasizes the fact that the discharge of hazardous materials was performed by the former owner of the property without its knowledge or consent. Thus, it concludes that the rationale for the inclusion of a pollution exclusion clause in general liability policies, which is, in part "to deter deliberate pollution by withholding the shelter of liability insurance for injuries resulting from such conduct." (*Technicon Electronics Corp. v. American Home Assur.*

*Co.*, supra [141 A.D.2d 124, 533 N.Y.S.2d 91] at 103), would not be served by applying the exclusion to preclude coverage here. In support of this proposition, the plaintiff relies upon *Niagara County v. Utica Mut. Ins. Co.*, 80 A.D.2d 415, 439 N.Y.S.2d 538, lv. dismissed, 54 N.Y.2d 608, 443 N.Y.S.2d 1030, 427 N.E.2d 1191, and *Autotronic Systems v. Aetna Life & Cas. Co.*, 89 A.D.2d 401, 456 N.Y.S.2d 504, decided by the Appellate Division, Fourth Department and Third Department, respectively. .... We decline to follow the holding in Autotronic and the dicta in Niagara County. The clear and unambiguous language of the pollution exclusion makes no exception for pollution caused by someone other than the insured where that pollution is not "sudden and accidental". To impose such an exception under the instant circumstances would be to "vary the contract of insurance to accomplish (this court's) notions of abstract justice or moral obligation" (*Breed v. Insurance Co. of North Amer.*, 46 N.Y.2d 351, 355, 413 N.Y.S.2d 352, 355, 385 N.E.2d 1280, 1282), something which we may not do. 144 A.D.2d at 446–47, 533 N.Y.S.2d at 1011–12.[11]

Most significantly, the New York Court of Appeals recently affirmed the decision of the Second Department in language including that of the lower court:

We also reject plaintiff's contention that since it was not the actual polluter, but merely inherited the problem from the prior landowner, the pollution exclusion clause cannot bar its present insurance claim. Simply put, there is nothing in the language of the pollution exclusion clause to suggest that it is not applicable when liability is premised on the conduct of someone other than the insured.

*Powers Chemco, Inc. v. Federal Ins. Co.*, 74 N.Y.2d 910, 911, 549 N.Y.S.2d 650, 651, 548 N.E.2d 1301, 1302 (1989). The court concluded that "the exclusion clause [was] 'unambiguously plain and operative' ...." *Id.* at 911, 549 N.Y.S.2d at 651, 548 N.E.2d at 1302 (brackets added) (quoted case omitted).

We would therefore not accept defendant's argument as it relates to the policies containing the exclusion.

Plaintiff has also argued that the releases executed by the *Fishel* plaintiffs in the separate settlements consummated with Westinghouse and SBC have extinguished Westinghouse's claim for contribution against SBC. But, as pointed out by defendant, Federal would still have had a duty to defend the contribution claims and the direct claims by the *Fishel* plaintiffs which were still pending at the time SBC requested a defense. *See Beckwith, supra.* The settlements might have been a defense to the claims in the underlying action but could not excuse SBC's insurer from defending the claims in the first instance.

We will issue an appropriate order.

### ORDER AND JUDGMENT

AND NOW, this 21st day of December, 1989, upon consideration of the cross-motions for summary judgment, it is ordered and declared that:

1. Plaintiff, Federal Insurance Company, had a duty to indemnify and defend defendant, Susquehanna Broadcasting Company, on the third party claim of Westinghouse Electric Corporation, for response costs arising from *Fishel v. Westinghouse*, Civil Action No. 85–0216.

2. Judgment is hereby entered in favor of defendant, Susquehanna Broadcasting Company, and against plaintiff, Federal Insurance Company, on the Third Count of plaintiff's complaint.

3. The Clerk of Court is directed to close this file.

11. We would also note that *Covington Township, supra,* a decision of this court, per Judge Nealon, is distinguishable because the Township, while charged with permitting discharges of pollution, also was alleged to have been negligent in monitoring waste disposal sites and issuing permits.